UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re )
)    Case No. 09-44348
Mahan Property, L.L.C., )    **FOURTH AMENDED CHAPTER 12 PLAN DATED May 20, 2010**
)
)
Debtor(s) )

Debtor is a Washington limited liability company formed in 1997 and owned and operated exclusively by Lawrence V. Mahan and Holly C. Mahan, husband and wife. The assets of the Debtor are used for a family run farm that has approximately $1,562,000.00 in real property and business assets. A list of all of the Debtor's real property, the value of Debtor's property, and the encumbrances that attach thereto is listed in a chart attached hereto as Exhibit A. The Debtor has stipulated to relief from stay on two properties and these properties are not included in the total value listed above, see paragraph 2(b)(iii) for full information. Debtor proposes to operate its farming operations for a 36 month period and pay creditors pursuant to the terms contained in this Plan. Debtors are also proposing sale of their property as detailed in pt. II and V of this Plan. The Debtor will make plan payment pursuant to the proposed budget attached hereto as Exhibit B, listed under the line item titled "**ALLOCATION TO TRUSTEE**". In the event that the Debtor is unable to make this monthly payment in part or in full, the Debtor shall have four (4) months to cure any deficiency to the Trustee along with his regularly scheduled payment. This payment shall begin the first day of the month following the confirmation of this plan. In addition, the Debtor plans, as set forth herein, to sell real and personal property during this process. *Additionally, the Debtor will list all of its property that is not currently the subject of a sale, for sale on immediately.* The Trustee will receive from the total the receipts set forth herein an amount sufficient to pay all allowed unsecured claims.


I.    PAYMENTS TO TRUSTEE AND ONGOING EXPENSES


The debtor shall pay to the trustee (a) a periodic monthly payment in the amount set forth in Debtor's budget attached hereto as Exhibit B pursuant to the line item titled "**ALLOCATION TO TRUSTEE**", (b) all proceeds from avoided transfers, including proceeds from transfers avoided by the trustee; (c) upon receipt by the debtor, all net tax refunds attributable to prepetition tax years and net tax refunds attributable to postpetition tax years (i.e., tax refunds not included on Schedule I, less tax paid by debtor for a deficiency shown on any tax return for that same postpetition tax year or tax paid by setoff by a tax agency for a postpetition tax year) received by the debtor during: 36 months from the date the first plan payment is due. The Debtor will make this payment pursuant to the proposed budget attached hereto as Exhibit B. In the event that the Debtor is unable to make this monthly payment in part or in full, the Debtor shall have four(4) months to cure any deficiency to the Trustee along with his regularly scheduled payment. This payment shall begin the first day of the month following the confirmation of this plan.

To date, the Debtor's have paid a total of $7,500.00 to the Trustee to be distributed to Creditors pursuant to Order Authorizing Preconfirmation Payment and Distribution entered with this Court.

II.. DISTRIBUTION OF PAYMENTS MADE TO THE TRUSTEE AND DESCRIPTION OF CREDITORS' ENCUMBRANCES

Listed below is a description of the Debtor's proposed payments to creditors from payments made to the Trustee in this Case. The description details the underlying creditor, the property secured by the encumbrance, the amount owed and the proposed payment to said creditor. **This information is further broken down in the spreadsheet attached as Exhibit A and the Budget attached as Exhibit B.**

From the payments so received, the trustee shall make disbursements as follows:
    A. ADMINISTRATIVE EXPENSES
        1.    Trustee. The percentage set pursuant to 28 U.S.C. §586(e).
        2.    Other administrative expenses. As allowed pursuant to 11 U.S.C. §§ 507(a)(2) or 707(b).
        3.    Attorney's Fees. The total amount of Attorney's fees will be presented pursuant to fee application made to the Court and, upon approval, paid first from any funds in which are held by the Debtor's attorney as a retainer and then from monies received from the sale of Debtors' property after underlying creditors are paid in full.
    B. SECURED CLAIMS:Payment to creditors whose claims are filed and allowed pursuant to 11 U.S.C. § 502(a) or court order, as stated in this Section B. Unless ranked otherwise, payments to creditors will be made

pursuant to this Section B. Secured Creditors shall retain their liens until payment of the underlying debt, determined under nonbankruptcy law, or discharge under 11 U.S.C. § 1228, as appropriate. Secured creditors, other than current mortgage payments and continuing payments and except as provided in 26 USC § 6621(a)(2) and 11 USC § 1222(b)(2) as limited by 11 USC § 1225(a), will be paid the amount of their claim or the value of their collateral, whichever is less, plus per annum uncompounded interest from the Petition filing date. Interest rate and monthly payment in the Plan control unless a creditor timely files an objection to confirmation. Value of collateral stated in the Proof of Claim controls unless otherwise ordered following timely objection to claim. The unsecured portion of any claim shall be paid as a nonpriority unsecured claim unless entitled to priority by law. **Any creditors holding allowed secured claims not specified below shall not receive payment from the Trustee.** If the interest is left blank, the applicable interest rate shall be 12%. The following is a list of Secured Creditors and description of the proposed payment to this Creditor:

1.      <u>Lornty Capital, L.L.C.</u> Lornty Capital, L.L.C., who was assigned the Deed of Trust and Promissory Note from Puget Sound Capital, holds of a First Position Deed of Trust against Debtor property with the real property located at 14624 129th Lane SE, Yelm, WA 98597, Parcel#21601211200; 15005 129th Lane SE, Yelm WA 98597, Parcel#21601210600; 14948 129th Lane SE, Yelm, WA 98597, Parcel #21601210800; 15200 129th Lane SE, Yelm, WA 98597; Parcel #21601120100; 14532 130th Lane SE, Yelm, WA 98597, Parcel #21601320300; 14618 130th Lane SE, Yelm, WA 98597, Parcel #21601320400; 12603 Rolling Hills Lane SE, Yelm, WA 98597, Parcel #21601211400; 14522 129th Lane SE, Yelm, WA 98597, Parcel#21601211300**.** The total amount of this underlying claim is $268,789.52 with annual interest rate of 12%.

The Debtor proposes payments on this obligation from three sources. First, the Debtor will pay the Lornty Capital, L.L.C. Group approximately $175,000.00, minus trustee's fees and expenses from the sale of the parcels of property located at Thurston Parcel # 21602410100, 21601210800, 21601211200, 21601211300 & 21601211400 as detailed in pt. VII of this plan and detailed in the Purchase and Sale Agreement attached hereto as Exhibit C  This payment will be made by Debtor through the Trustee. Second, the Debtor proposes to make payments on the remainder from the sale of the property located at 15005 129th Lane SE, Yelm WA, 98597, Thurston #21601210600. The complete breakdown of this property sale is listed in pt. V of thisplan  and a copy of the real estate contract for this sale is attached hereto as Exhibit D.. Debtor will make a payment of $20,000.00, minus Trustee's fees and costs, to Lornty, through the Trustee.  Debtor will then make a monthly payment of $543.69, minus trustee's fees and expenses to Lornty for the remaining 60 months of the plan. This monthly payment will be made through the Trustee.  The distribution of payments is contained in the proposed Budget attached hereto as Exhibit B. Third, if necessary, the Debtor will pay any remaining funds owed to the Lornty Capital, L.L.C. from the sale of the water rights of these properties to the city of Yelm and the marketing and sale of Debtor's remaining property.

If the Debtor defaults in any of the required payments of this plan and Exhibit B attached hereto, Debtor will have four months to cure. If Debtor fails to cure within this time period, the Lornty Capital, L.L.C. will have relief from stay to proceed to foreclosure without further hearing of the Court. Any remaining property that is not subject to pts. V, VI, and VII has been listed for sale.

(ii.)   <u>Marilyn Rasmussen.</u>  Marilyn Rasmussen holds Second Position Deed of Trust on the property located at 14532, 130th Lane SE., Yelm, WA 98597, Parcel# 21601320300; 14618 130th Lane SE, Yelm, WA 98597, Parcel #21601320400; and 15005 129th Lane SE, Yelm, WA 98597, Parcel #21601210600. This property has approximate value of $215,000.00. The total amount of this claim is $95,000.00. The Debtor proposes payment of this claim from the sale of Debtor's property and, if necessary, from the sale of water rights listed in pt. 6 of this plan. Additionally, the Debtor will immediately list this property for sale, with approval of any said sale being subject to order of the Court.  The proceeds from any said sale will first be applied to the underlying encumbrances and then to unsecured creditors.

(iii.) Puget Sound Capital Corporation had underlying obligations that encumbered Debtor's properties located at 159 Lake Rd, Silver Creek, WA 98585 and 3607 16th Lane, Olympia, WA 98512.  Puget Sound Capital Corporation was granted relief from stay on both of these properties to complete foreclosure.

(d) Fourth, pro rata, until fully paid, to allowed priority claims in the order stated in §507(a)(3)-(10), unless otherwise ordered.  As of the claims bar date, there are no filed priority claims in this case.

(e) Fifth, pro rata, to timely filed and allowed nonpriority unsecured claims, the amounts required by §1225(b)(1). These monies will be distributed in the method indicated in the applicable section marked below. The terms of pt. 5 shall also apply. The total amount of unsecured claims filed as of the claims bar date are $2,633.20. The Debtor estimates that the creditors will receive approximately 100% of their claims subject to subsection (h) below. This percentage will vary depending on the amount of total creditors' claims filed.

(f) Pursuant to §1225(a)(4), the unsecured creditors as a group will receive a minimum of $35,483.41.

(g) There are $9,953.63 in claims that were filed with a designation as unknown.  These claims are the subject of potential dispute and may be resolved through later litigation as to value.  If claims are determined to valid then they will be allowed and classified as allowed unsecured creditors.  Allowed unknown claims shall be paid on a pro-rata basis after priority and unsecured claims are paid in full.

III..      Subject to the provisions of §502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order.

IV..      The debtor shall make plan payments for the longer of either: (a) 36 months from the date the first payment is due under the original plan, unless the debtor pays 100% of all unsecured claims with interest if required, or (b) no later than 60 months.

V. .      The Debtor is proposing the sale of property located at 15005 129th Lane SE, Yelm WA, 98597, Thurston #21601210600.  The terms of this sale are as follows,

A..      The Debtors will sell the property to Ronald A. Wheatley and Lisa D. Abramo for the purchase amount of $85,000.00.

B.      The sale will be "as is" and "where is" without warranties of any kind.  In making this purchase, buyer(s) has (have) satisfied himself (themselves) as to the identity, nature, extent, and quality of the property being sold.

C.      Conveyance will be by Purchase and Sale Agreement and Real Estate Contract.

D..      Terms .  The purchaser will pay $20,000.00 as a down payment to Debtor.  Purchaser will pay Debtor $543.69 per month until at a rate of 8% per annum.  A copy of this purchase and sale agreement and real estate contract is attached hereto as Exhibit C.

Debtor are asking that this sale be approved by confirmation of this plan and agreement of the Trustee, pursuant to 11 U.S.C. §§ 363 and 1206..  Upon approval, the Debtor will distribute all proceeds from this sale to the Trustee for distribution to the underlying creditor in this case, the Lornty Capital, L.L.C..

VI.      Water Rights Sale- Debtor is negotiating the sale of water rights to the city of Yelm.  This sale will effect the property located at 14624, 129th Lane SE., Yelm, WA 98597, Parcel#21601211200;  15005, 129th Lane SE, Yelm WA 98597, Parcel#21601210600; 14948 129th Lane SE., Yelm, WA 98597, Parcel #21601210800; 15200, 129th Lane SE, Yelm, WA 98597; Parcel #21601120100; 14532, 130th Lane SE, Yelm, WA 98597, Parcel #21601320300; 14618, 130th Lane SE, Yelm, WA 98597, Parcel #21601320400; 12603 Rolling Hills Lane SE, Yelm, WA 98597, Parcel #21601211400; 14522, 129th Lane SE, Yelm, WA 98597, Parcel#21601211300**.** Although active negotiations exist with the city of Yelm, there has not been a set price for these water rights.  The debtor will modify this plan and obtain court approval for any sale thereof.

VII.      Herbrand Sale.  The Debtor will sell the property located at Thurston County tax parcel numbers 21602410100, 21601210800, 21601211200, 21601211300 & 21601211400 for $175,000.00, minus trustee's fees and expenses, to the Herbrand Company.  This is a cash sale and will be made free and clear of liens.  The Debtor asks that this sale be approved by confirmation of this plan.  The proceeds from this sale will be disbursed to the Trustee for distribution to the first position creditor in this case Lornty Capital, L.L.C.  The Debtor anticipates that this sale will be closed after confirmation of Debtor's plan.  A copy of the purchase and sale agreement is attached hereto as Exhibit C.  Debtor are asking that this sale be approved by confirmation of this plan and agreement of the Trustee, pursuant to 11 U.S.C. §§ 363 and 1206.

VIII.  The Debtor previously proposed the sale of property located at 15200, 129th, Yelm, WA 98585, Thurston County Parcel# 21601120100 to Jason's Greenhouse, Inc.  This sale was a lease to own agreement.  Debtor received rent in the amount of $1,500.00 a month.  The amounts received for this rent were paid to the Trustee in this case.   The Trustee holds these amounts and disburse pursuant to further order of the Court.  Jason's Greenhouse, Inc. has vacated the leased premises.

IX..      Sale of Remaining Property- All property that is not subject of pt. V, VI, and VII of this plan will be listed immediately for sale.  All sales will subject to Court approval, with proceeds being first paid to the underlying creditors, unsecured creditors, and then the Debtor.

X.      Revestment of Property:
Unless otherwise provided in Paragraph IV., during the pendency of the plan all property of the estate as defined by 11 USC §1207 shall remain vested in the Debtors, except that earnings and income necessary to complete the terms

of the Plan shall remain vested in the Trustee until discharge. The Debtor(s) shall not, without approval of the Court, sell or otherwise dispose of or transfer real property other than in accordance with the terms of the confirmed Plan.

XII.     This plan may be altered postconfirmation in a non-material manner by court order after notice to the debtor, the trustee, any creditor whose claim is the subject of the modification, and any interested party who has requested special notice.

XIII.     Except as otherwise provided herein, (a) postpetition interest on all unsecured claims is disallowed, and (b) unsecured claims allowed in the amount of $25 or less, to the extent claims of that class are entitled to a distribution under this plan, shall be paid in the full amount allowed prior to any payments to other unsecured claims of the same class.

DATED: May 20, 2010                          /s/ Lawrence V. Mahan_____
                                                          Lawrence V. Mahan, Managing Member of  DEBTOR

**IN ORDER TO ASSURE PROPER SERVICE ON ALL CREDITORS LISTED IN pts. 2(b)(1),2(b)(2), or 2(b)(3) OF THE PLAN pursuant to FRBPs3012, 4003(d), 9014 and 7004: (a) I LISTED ON THE MAILING MATRIX such creditors, other than insured depository institutions, in care of a person or entity authorized to be served and all parties requesting special notice shall receive copies of this plan pursuant regular first class mail.**

Benjamin J. Riley_____
Benjamin J. Riley, WSBA#34949
Brian L. Budsberg, WSBA#11225
DEBTOR'S ATTORNEY

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET JUNE 2010 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| FORECAST | | | | | |
| LOT 11 DOWN PAYMENT -TRUSTEE,CLOSING COSTS | | | | | 20000 |
| WHEATLEY/ABRAMO PAYMENT | | MONTHLY PAYMENT | | | 563.69 |
| HERBRAND -TRUSTEE AND COSTS | | | | | 175,000 |
| INTEREST | | | | | |
| LORNTY | DOWN PAYMENT -CLOSING COSTS | | | | 20000 |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 195,564 |

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET JULY 2010 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| FORECAST | | | | | |
| Wheatley/Abramo | | | | | 563.69 |
| | | | | | |
| INTEREST | | | | | |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET AUGUST 2010 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| FORECAST | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| INTEREST | | | | | |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET SEPTEMBER 2010 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| FORECAST | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| INTEREST | | | | | |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| | | | | | |
|---|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | | |
| BUDGET OCTOBER 2010 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| FORECAST | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| INTEREST | | | | | |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| | | | | | | |
|---|---|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | | | |
| BUDGET NOVEMBER2  2010 | | | | | | |
| | | | | | | |
| | | | | | | |
| INCOME | | | | | | |
| FORECAST | | | | | | |
| WHEATLEY/ABRAMO | | | | | | 563.69 |
| | | | | | | |
| INTEREST | | | | | | |
| LORNTY | | | | | | 563.69 |
| | | | | | | |
| ALLOCATION TO TRUSTEE | | | | | | 563.69 |

| | | | | | |
|---|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | | |
| BUDGET DECEMBER2010 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| FORECAST | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| INTEREST | | | | | |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| | | | | | |
|---|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | | |
| BUDGET JANUARY 2011 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| INTEREST | | | | | |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET FEBRUARY 2011 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| INTEREST | | | | | |
| LORNTY | | | | | 563.69 |
| | | | | | |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET 2011 MARCH | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| LORNTY | | | | 563.69 |
| | | | | |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET APRIL 2011 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| LORNTY | | | | 563.69 |
| | | | | |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET MAY 2011 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| LORNTY | | | | 563.69 |
| | | | | |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET JUNE 2011 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| PROJECTED SALE | | | | 75000 |
| TOTAL | | | | 75563.69 |
| | | | | |
| INTEREST | | | | |
| LORNTY | | | | 563.69 |
| LORNTY | PROJECTED SALE | | | 75000 |
| | | | | |
| ALLOCATION TO TRUSTEE | | | | 75563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET JULY 2011 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| LORNTY | | | | 563.69 |
| | | | | |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET 2011 AUGUST | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| LORNTY | | | | 563.69 |
| | | | | |
| | | | | |
| | | | | |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET 2011 SEPTEMBER | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| INTEREST AND PRINCIPLE | | | | | |
| LORNTY | | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET OCTOBER 2011 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| WHEATLEY/ABRAMO | | | | | 569.63 |
| | | | | | |
| INTEREST AND PRINCIPLE | | | | | |
| LORNTY | | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| MAHAN PROPERTYLLC | | | | | |
|---|---|---|---|---|---|
| BUDGET NOVEMBER 2011 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| WHEATLEY/ABRAMO | | | | | 569.63 |
| | | | | | |
| INTEREST AND PRINCIPLE | | | | | |
| LORNTY | | | | | 569.63 |
| ALLOCATION TO TRUSTEE | | | | | 569.63 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET DECEMBER 2011 | | | | |
| 12/9/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST AND PRINCIPLE | | | | |
| LORNTY | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET JANUARY 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| wheatley/abramo | | | | 563.69 |
| | | | | |
| INTEREST AND PRINCIPLE | | | | |
| LORNTY | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET FEBRUARY 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST AND PRINCIPLE | | | | |
| LORNTY | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET MARCH 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| INTEREST AND PRINCIPLE | | | | |
| LORNTY | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET APRIL 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| INTEREST AND PRINCIPLE | | | | |
| LORNTY | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET MAY 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| INTEREST AND PRINCIPLE | | | | |
| LORNTY | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET JUNE 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| PROJECTED LOT SALE- TRUSTEE CLOSING COSTS | | | | 75000 |
| | | | | |
| | | | | |
| LORNTY INTEREST | | | | 563.69 |
| PROJECTED LOT SALE- TRUSTEE, CLOSING COSTS | | | | 75000 |
| ALLOCATION TO TRUSTEE | | | | 75563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET JULY 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| INTEREST AND PRINCIPLE | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | | |
|---|---|---|---|---|---|
| BUDGET AUGUST 2012 | | | | | |
| | | | | | |
| | | | | | |
| INCOME | | | | | |
| WHEATLEY/ABRAMO | | | | | 563.69 |
| | | | | | |
| | | | | | |
| INTEREST AND PRINCIPLE | | | | | |
| | | | | | |
| RASMUSSEN | | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET SEPTEMBER 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET OCTOBER 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET NOVEMBER 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET DECEMBER 2012 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET JANUARY 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET FEBRUARY 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET MARCH 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTYLLC | | | | |
|---|---|---|---|---|
| BUDGET APRIL 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET MAY 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| INTEREST | | | | |
| RASMUSSEN | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTYLLC | | | | |
| BUDGET JUNE 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| PROJECTED SALE OF LOT 13 | | | | 250000 |
| | | | | |
| INTEREST | | | | |
| WHEATLEY / WH | | | | 563.69 |
| PROJECTED SALE OF LOT 13-TRUSTEE, CLOSING COSTS | | | 250,000 |
| ALLOCATION TO TRUSTEE | | | | 250,563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET JULY 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET AUGUST 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET SEPTEMBER 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| PAYMENTS | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET OCTOBER 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| PAYMENTS | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET NOVEMBER 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| PAYMENTS | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET DECEMBER 2013 | | | | |
| | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 569.63 |
| | | | | |
| PAYMENTS | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET JANUARY 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| PAYMENT | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET FEBRUARY 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| PAYMENT | | | | |
| UNSECURED CREDITORS | | | | 1500 |
| ALLOCATION TO TRUSTEE | | | | 1500 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET MARCH 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| PAYMENT | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET APRIL 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| PAYMENT | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET MAY 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TOTRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET JUNE 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET JULY 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMA | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET AUGUST 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET SEPTEMBER 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET OCTOBER 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| MAHAN PROPERTY LLC | | | | |
|---|---|---|---|---|
| BUDGET NOVEMBER 2014 | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

| | | | | |
|---|---|---|---|---|
| MAHAN PROPERTY LLC | | | | |
| BUDGET 2014 DECEMBER | | | | |
| 12/13/2009 | | | | |
| | | | | |
| INCOME | | | | |
| WHEATLEY/ABRAMO | | | | 563.69 |
| | | | | |
| | | | | |
| UNSECURED CREDITORS | | | | 563.69 |
| ALLOCATION TO TRUSTEE | | | | 563.69 |

MAHAN PROPERTY LLC
BUDGET 2015 JANUARY
 1/13/2009

INCOME
WHEATLEY/ABRAMO                          563.69

UNSECURED CREDITORS                      563.69
ALLOCATION TO TRUSTEE                    563.69

# MAHAN PROPERTIES, LLC PROPERTIES
## THURSTON COUNTY

| | MAHAN PROPERTY, LLC | Owned by Mahan Property, LLD | Assessed Value 2010 | First Encumbrance | Second Encumbrance | Balance and/or Notes |
|---|---|---|---|---|---|---|
| 1. | 216-012-11300 | 14522 – 129TH Lane SE        Lot 20<br>Yelm, WA  98585<br>*(Herbrand Sale)* | 98,250 | Lornty Capital<br>$268,789.52<br>for.#s 16 thru 22 | | |
| 2. | 216-012-11200 | 14624 – 129th Lane SE        Lot 19<br>Yelm, WA  98585<br>*(Herbrand Sale)* | 97,700 | See #16 | | |
| .3. | 216-012-11400 | 12603 Rolling Hills Ln SE  Lot 21<br>Yelm, WA  98585<br>*(Herbrand Sale)* | 92,700 | See  #16 | | |
| 4. | 216-012-10800 | 14948 – 129th Lane SE      Lot 15<br>Yelm, WA  98585<br>*(Herbrand Sale)* | 88,100 | See #16 | | |
| 5. | 216-012-10600 | 15005 – 129th Lane SE     Lot 11<br>Yelm, WA  98585 | 103,350 | See #16 | Rasmussen<br>$95,000 | Offer Pending?  $85K<br>20K down – 8% - 5 yr<br>amortized |
| 6. | 216-013-20300 | 14532 – 130th Lane SE      Lot 28<br>Yelm, WA  98585 | 67,250 | See #16 | See #19 | For Sale - $75K |
| 7. | 216-013-20400 | 14618 – 130th Lane SE      Lot 29<br>Yelm, WA  98585 | 74,500 | See #16 | See #19 | For Sale - $75K |
| 8. | 216-011-20100 | 15200 – 129th Lane SE -   Lot 13<br>Yelm, WA  98585 | $175,750 | See #16 | | For Sale - $300K |
| 9. | 216-024-10100 | 14216 – 129th Lane SE        Lot 1<br>Yelm, WA  98585<br>(Herbrand Sale) | 112,600 | | | |

# Exhibit C

## REAL ESTATE PURCHASE AND SALE AGREEMENT
### (With Earnest Money Provision)

This contract controls the terms of sale of property – read carefully before signing.

Puyallup, Washington                                        December 10, 2009

**THE HERBRAND COMPANY**, a Washington corporation, and/or assigns (hereinafter called "Purchaser"), hereby agrees to purchase, and **LAWRENCE V. and HOLLY C. MAHAN**, husband and wife, and **MAHAN PROPERTY LLC**, a Washington limited liability company, (hereinafter called "Sellers"), agree to sell the following described real estate located in the Counties of Lewis and Thurston, State of Washington (hereinafter the "Property"):

Legal Description of Property:
**Lewis County:** Portions of Sections 30 & 31, Township 12 North, Range 4 East, W.M. See **Exhibit A** for complete legal descriptions.
**Thurston County:** Portions of Sections 1 & 2, Township 16 North, Range 1 East, W.M.

Tax Parcel Numbers:
**Lewis County:** See **Exhibit A** for complete list of tax parcel numbers.
**Thurston County:** 21602410100, 21601210800, 21601211200, 21601211300 & 21601211400

Purchaser and Sellers hereby authorize the closing agency to insert over their signatures the correct legal description of the Property or to correct the legal description previously entered if erroneous or incomplete.

1. **Purchase Price.** The total purchase price is **Six Hundred Seventy Five Thousand dollars** ($675,000.00), payable as follows: All cash at closing.

2. **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property is to be free of all encumbrances and defects except those approved in writing by Purchaser. Rights reserved in federal patents or state deeds, building or use restrictions general to the area, and building or zoning regulations or provisions shall not be deemed encumbrances or defects. Purchaser shall conclusively be deemed to have accepted the condition of title unless the Sellers or Listing Agent receives written notice of Purchaser's objections within ten (10) business days after the Commitment for title insurance is delivered to the Purchaser. Encumbrances to be discharged by Sellers shall be paid from Sellers' funds at closing.

3. **Forest Practices Act Disclosures and Related Obligations.**

   · Sellers acknowledge that the Property is subject to the following Forest Practices Act related obligations (check those that apply): ⊏ reforestation, ⊏ road maintenance and abandonment plans, ⊏ harvest strategies, and/or ⊏ the implementation of a mitigation plan. Sellers acknowledge completion of the above Forest Practice obligations.

   · Sellers warrant that they have not engaged in any unpermitted conversion/development activities on the Property.

   Prior to Closing, Purchaser agrees to sign and deliver to the Closing Agent and the Department of Natural Resources the Notice of Continuing Forest Land Obligation Form for the Lewis County properties. As of Closing, Purchaser is responsible for any continuing obligations under the Forest Practices Act for the Lewis County properties. This provision shall survive Closing.

   The Thurston County properties will be removed from Open Space designation at closing, and the Purchaser will be responsible to pay the compensating taxes.

4. **Contingencies.** The closing of this sale, according to the terms of this agreement is contingent upon the following:

   (a) Purchaser shall cause no liens, *lis pendens*, or other restrictions to be recorded against title to the Property by itself, or any of Purchaser's agents, contractors or invitees. Further, Purchaser agrees to defend, indemnify and hold Sellers harmless from and against any and all losses, damages, claims or suits which arise out of or are related to Purchaser's or its agents', contractors' or invitees' presence on the Property.

   (b) Lewis County Properties: Sellers agree to provide a legally recorded 60-foot easement over existing roadways though the Harris properties and the Harris/Mahan property. The intent of this

1

easement is to provide legal access from Hagen Road to the Mahan 29⁺ acres. Easement must be acceptable to Purchaser.

Unless otherwise expressly provided with respect to a specific contingency, the foregoing contingencies must be removed, satisfied or waived in writing on or before the **15 day of January, 2010**, and if not waived or satisfied by that date, than this Agreement shall become null and void and any earnest money paid by the Purchaser shall be returned to the Purchaser.

5. **Earnest Money Receipt.**

    (a) Purchaser shall deposit the sum of **Two Thousand Five Hundred dollars ($2,500.00)**, evidenced by personal check due and payable upon removal of the contingency. The earnest money shall be applicable to the Purchase Price, and will be paid or delivered in part payment of the purchase price for the Property at closing.

    (b) Earnest money and this agreement shall be held by **Chicago Title Company** for the benefit of the parties hereto.

6. **Title Insurance.** Sellers shall furnish to Purchaser a standard form Owner's or Purchaser's policy of title insurance in the amount of purchase price. Sellers authorize the closing agent to apply as soon as practical for such title insurance, and as soon as reasonably possible, Purchaser shall be furnished a preliminary commitment therefore issued by **Chicago title Company** located at 5605 112ᵗʰ St East, Suite 900, Puyallup, WA 98373. The Sellers shall assume any cancellation fee for such commitment or policy. The title policy to be issued shall contain no exceptions other than those provided in said standard form, plus encumbrances or defects noted in Paragraph 2 above. If title is not so insurable as above provided and cannot be made so insurable by termination date set forth in Paragraph 12 hereof, earnest money shall be refunded and this agreement shall terminate; provided, however, that Purchaser may waive defects in writing and elect to purchase.

7. **Default.** If Purchaser defaults (that is, fails to perform the acts required of it), that portion of the earnest money that does not exceed five percent (5%) of the Purchase Price may be retained by Sellers as liquidated damages, which shall be the sole and exclusive remedy of Sellers for such default. If Sellers default, Purchaser may, at its option, (a) obtain return of the earnest money or (b) bring suit against Sellers for specific performance of this Agreement and to recover any incidental damages resulting from Sellers' default.

8. **Conveyance.** If this agreement is for conveyance of fee title, title shall be conveyed by Statutory Warranty Deed free of encumbrances or defects except those allowed pursuant to Paragraph 2.

9. **Pro-Ration.** Taxes for the current year, rents, insurance, interest, water and other utilities constituting liens shall be prorated as of date of closing.

10. **Possession.** Sellers shall deliver possession to Purchaser on date of closing.

11. **Time for Acceptance.** Purchaser's offer is made subject to the acceptance of Sellers on or before twelve o'clock midnight on _____, 2009. If Sellers do not accept this agreement within the time specified, the earnest money shall be refunded to Purchaser upon demand.

12. **Time for Closing – Responsibilities of Parties.** The sale shall be closed within 15 days after the later of Purchaser's waiver of the feasibility contingency or Purchaser's receipt of a preliminary commitment for title insurance policy showing title insurable, as above provided, but in any event not later than the **29ᵗʰ day of January, 2010**, upon which date this Agreement shall terminate. The Purchaser and Sellers shall deposit with the closing agent all instruments, documents and monies necessary to complete the sale in accordance with the agreement. Escrow fees, if any, shall be divided equally between the Sellers and Purchaser. Notwithstanding the foregoing, Purchaser shall have the unilateral right at any time to extend the closing date by no more than ten (10) business days beyond the termination date set forth above.

13. **Escrow/Closing Costs.** Closing shall occur at **Chicago Title Company**, who shall act as the escrow/closing Agent. Unless limited by law or modified by the terms of this Agreement, Purchaser and Sellers shall pay at closing all customary and usual closing costs and fees, including but not limited to the following: Sellers shall pay the Sellers' excise tax, the cost of the owner's standard form of title insurance, recording fees, and Sellers' half share of escrow fees. Purchaser shall pay all costs and fees associated with the financing, recording fees, any other costs agreed to under the terms of this Agreement, and Purchaser's half share of escrow fees. Taxes for the current year, rents, interest, association or homeowner's fees, if any, shall be prorated as of the date of closing.

2

14. **FIRPTA Compliance.** The Closing Agent is instructed to prepare a certification that the Sellers are not a "foreign person" within the meaning of the Foreign Investment in Real Property Tax Act. The Sellers agree to sign this certification. If the Sellers are a foreign person and this transaction is not otherwise exempt from FIRPTA, the Closing Agent is instructed to withhold from the Sellers' funds and pay to the Internal Revenue Service the appropriate amount under FIRPTA.

15. **Date of Closing.** For purposes of this agreement, "date of closing" shall be construed as the date upon which all appropriate documents are recorded and proceeds of this sale are available for disbursement to Sellers. Funds held in reserve accounts pursuant to escrow instructions shall be deemed, for purposes of this definition, as available for disbursement to Sellers.

16. **Risk of Loss.** If prior to closing, improvements on said premises shall be destroyed or materially damaged by fire or other casualty, or if all or any part of the Property becomes the subject of condemnation, than this Agreement at the option of Purchaser shall become null and void. If Purchaser elects to continue the transaction, all insurance proceeds and/or condemnation proceeds, if any, shall be payable to Purchaser.

17. **General Provisions.**

(a) Notices: Unless otherwise specified in this Agreement, any notice required or given under the terms of this Agreement must be written. Receipt of any notice shall be defined as the earlier of: three (3) business days following the postmark date; or the date the notice is actually received by the party or at the office of the Listing Agent for Sellers and Selling Agent for Purchaser regardless of the agency relationships involved. For the purposes of this Agreement, receipt by the appropriate agent (as set forth above) of a copy of documents related to this Agreement, shall constitute receipt by the party.

(b) Faxes and Counterparts: Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission shall be the same as delivery of an original. At the request of either party, or the closing agent, the parties will confirm facsimile transmitted signatures by signing an original document. This Agreement may be signed in counterparts.

(c) Integration: There are no verbal agreements or understandings that modify this Agreement. This Agreement constitutes the full understanding between Purchaser and Sellers, and may not be modified except in writing and signed by both parties.

(d) Time is of the Essence: Time is of the essence as to all terms and conditions of this Agreement.

(e) Venue/Applicable Law: This Agreement shall be interpreted and construed according to the laws of the State Washington; venue shall be in the county in which the Property is located.

(f) Survival: All terms of this Agreement, which are not satisfied or waived prior to closing, shall survive closing. These terms shall include, but not be limited to, representations and warranties, attorneys' fees and costs, disclaimers, repairs, rents and utilities, etc.

(g) Invalidity of Terms and Conditions: If any term or condition of this Purchase and Sale Agreement is found to be invalid, the invalidity shall not affect any other term or condition of the Purchase and Sale Agreement and the Purchase and Sale Agreement shall be construed as if not containing the invalid term or condition.

(h) Professional Advice: Each party is specifically aware that issues such as form of deed used for conveyance, agency representation, and liquidated damages are complicated and the parties may require advice that a real estate licensee is not licensed to give and for which parties should contact their own attorney or accountant.

(i) Like-Kind Exchange: If either Purchaser or Sellers intend for this transaction to be part of a Section 1031 like-kind exchange, than the other party agrees to cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and costs) incurred by the cooperating party are related only to the exchange are paid or reimbursed to the cooperating party at or prior to closing.

18. **Hazardous Substances.** Except as otherwise disclosed to Purchaser in writing, Sellers represent and warrant (a) that Sellers have not deposited any hazardous substances (as defined by Federal or State law) on the Property; (b) that Sellers have no actual knowledge of the presence of any hazardous substances on the Property; and (c) that Sellers have not received any notice of any pending or threatened investigation or remedial action by any governmental agency regarding the release of hazardous substances on the Property.

3

19. **Attorney's Fees.** In the event it is necessary for any party hereto, or its authorized representative, successor or assign, to institute suit or begin arbitration proceedings in connection with this Agreement or the breach thereof, the substantially prevailing party in such suit or proceeding shall be entitled to reimbursement for its reasonable costs, out of pocket expenses, and attorneys' fees incurred, including costs, out of pocket expenses and attorneys' fees incurred on appeal.

20. **Sellers' Disclosure Pursuant to RCW Chap. 64.06.** Purchaser acknowledges receipt of Disclosure Statement as part of this Agreement.

PURCHASER:                                    ADDRESS:

The Herbrand Company                          315 - 39TH Avenue SW, Suite 6
                                              Puyallup, WA 98373

By: Keith Herbrand, President                 **TELEPHONE: 1-888-384-6237**

On this date _____, I/WE hereby approve and accept the sale set forth in the above agreement and agree to carry out all the terms thereof on the part of the Seller. I/WE further acknowledge receipt of a true copy of this agreement signed by both parties.

SELLERS:                                      ADDRESS:

Mahan Property, LLC                           12307 Vail Cutoff Road
                                              Rainier, WA 98576

By: Lawrence V. Mahan, Managing Member        **TELEPHONE: (360) 446-7267**

Lawrence V. Mahan, a married man

Holly C. Mahan, a married woman

A true copy of the foregoing agreement signed by the Sellers is hereby received by Purchaser on _____, 200_.

PURCHASER: The Herbrand Company

By: Keith Herbrand, President

4

## ADDENDUM TO
## REAL ESTATE PURCHASE AND SALE AGREEMENT

This is an Addendum to the Real Estate Purchase and Sale Agreement between THE HERBRAND COMPANY, a Washington corporation ("Purchaser") and LAWRENCE V. and HOLLY C. MAHAN, husband and wife, and MAHAN PROPERTY, LLC, ("Seller") hereinafter the "REPSA." Except as herein set forth, the provisions of the REPSA shall prevail.

1. The allocation of purchase price shall be as follows:

> Thurston County Properties - $175,000.
> Lewis County Properties - $500,000.

The purchase price for each parcel shall be allocated pro-rata based upon 2010 assessed value.

2. This transaction is subject to and contingent upon bankruptcy approval.

3. The closing date is extended to _June 30 2010._

4. The period for Grantor to obtain the easement described in Section 4(b) is extended to _MAy 31, 2010._

5. The following addendum shall be added to each of the deed(s) on the Thurston County properties:

> "Grantor, reserves the right to retain or otherwise sever, transfer, sell or assign (hereinafter "Sale or Sell") all permitted ground water rights appurtenant to the property. At Grantor's request, Grantee will cooperate with the Sale of such permitted water rights to one or more persons, including the Cities of Yelm, Lacey and/or Olympia by signing any documents reasonably necessary to accomplish the Sale and each party shall bear the respective costs associated with a review of such documents. Grantor shall be entitled to receipt of all sales proceeds. Grantee shall take no action to encumber or otherwise restrict Grantor's rights to Sell the permitted water rights. At Grantor's cost and initiative, Grantee will cooperate with Grantor in taking such physical actions as it deems reasonably necessary to preserve the permitted water rights appurtenant to

the property. This agreement shall be binding upon the heirs and assigns of the parties and its provisions shall run with the land. Any disputes shall be resolved by arbitration under the provisions of RCW 7.04 et seq. and the provisions of this reservation may be enforced by Grantor by seeking specific performance without the necessity of filing a bond."

6.    The parties shall endeavor to accomplish the above described Sale of water rights before or at closing.

7.    Grantor alleges that the State of Washington or its political subdivisions has not allowed him to harvest timber on certain portions of the property as reflected in FPA#2916649[1] (the "Certificate"), on the basis that the trees are located in a riparian area. The price of the Lewis County parcel has been reduced by the estimated stumpage value of the trees because the State has taken the position that those units cannot be logged. Grantor reserves all causes of action against the State of Washington or its political subdivision for its failure to allow such harvest. Any potential causes of action against the State of Washington or its political subdivision are reserved by Grantor, its heirs and assigns, and the reservation shall survive closing.

Alternatively, Grantor has proposed and the State of Washington has tentatively accepted a grant of Riparian Rights described in the Certificate, but has not been able to pay for the rights on the basis that there are insufficient available funds. The parties desire to provide for the possibility of granting such rights to the State of Washington while reserving the right to payment for such rights in the name of the Grantor. Accordingly, the following addendum shall be added to each deed on the Lewis County properties:

"Grantor reserves the right to receive payment for the remaining portion of the 17 "Uneconomic To Harvest" units on Grantor's property (the "Units") which may be conveyed to the State of Washington or its political subdivisions or another third party as Forest Riparian Rights (the "Sale"). Such Units are more particularly described in FPA#2916649[1] as amended.(the "Certificate"). At Grantor's cost, initiative and request, Grantee will cooperate with the Sale of the Units by timely signing any and all documents reasonably necessary to accomplish the Sale (including deeds and applications). Grantee shall bear the cost associated with its review of such documents. Grantee shall take no action to encumber or otherwise restrict Grantor's rights to Sell the Units. (A sale of the property subject to the rights reserved in the Grantor shall not be considered an action which encumbers or restricts the right to sell the Units.) This agreement shall be binding upon the heirs and assigns of the parties and its

Addendum to Real Estate Purchase and
Sale Agreement - 2

provisions shall run with the land. Any disputes shall be resolved by arbitration under the provisions of RCW 7:04 et seq. and the provisions of this reservation may be enforced by Grantor by seeking specific performance without the necessity of filing a bond.

Subject to the provisions and grants of rights in the Certificate, the reservation of rights in the Units shall not be construed to give Grantor, its heirs and assigns, a right to physically log the Units. If the conveyance has not been within five (5) years of the date of this deed, (the "Reservation Period") then the rights and obligations to convey the Riparian Rights shall terminate, but the right of Grantor to receive payment for any conveyance of Units within the Reservation Period shall continue.

8.  The parties shall endeavor to accomplish the above described Sale of Units before or at closing.

9.  Notwithstanding the provisions of Section 3, Seller and Purchaser will equally share payment of compensating tax on the Thurston Properties.

10.  Except as specifically noted in the agreement, all properties are acquired in an "as is" condition and this provision shall survive closing.

PURCHASER:

THE HERBRAND COMPANY, a
Washington corporation

By _Dan Miller_____
    Its _Acquisition Manager_

SELLERS:

_____
LAWRENCE V. MAHAN, individually

_____
HOLLY C. MAHAN, individually

MAHAN PROPERTY, LLC, a Washington
limited liability company

Addendum to Real Estate Purchase and
Sale Agreement - 3

By _____

‌LARRY MAHAN

Its Manager

*1422.000/Mahan/Doc/Addendum*

Addendum to Real Estate Purchase and
Sale Agreement - 4

## EXHIBIT "A"
## TO PURCHASE AND SALE AGREEMENT

## COMPLETE LIST OF LEWIS COUNTY TAX PARCEL NUMBERS

| | | | |
|---|---|---|---|
| 1. | 030-223-003-002 | 38. | 030-227-002-002 |
| 2. | 030-223-003-003 | 39. | 030-227-002-003 |
| 3. | 030-223-003-004 | 40. | 030-227-002-004 |
| 4. | 030-223-003-005 | | |
| 5. | 030-223-003-006 | 41. | 030-227-002-005 |
| | | 42. | 030-227-002-006 |
| 6. | 030-223-003-007 | 43. | 030-227-002-007 |
| 7. | 030-223-003-008 | 44. | 030-227-002-008 |
| 8. | 030-223-003-009 | 45. | 030-227-002-009 |
| 9. | 030-223-003-010 | | |
| 10. | 030-223-003-011 | 46. | 030-227-002-010 |
| | | 47. | 030-227-002-011 |
| 11. | 030-223-003-012 | 48. | 030-227-002-012 |
| 12. | 030-223-003-013 | 49. | 030-227-002-013 |
| 13. | 030-223-003-014 | 50. | 030-227-002-014 |
| 14. | 030-223-003-015 | | |
| 15. | 030-223-003-016 | | |
| 16. | 030-223-003-017 | | |
| 17. | 030-223-003-018 | | |
| 18. | 030-223-003-019 | | |
| 19. | 030-223-003-020 | | |
| 20. | 030-223-003-021 | | |
| 21. | 030-223-003-022 | | |
| 22. | 030-223-003-023 | | |
| 23. | 030-223-003-024 | | |
| 24. | 030-223-003-025 | | |
| 25. | 030-223-003-026 | | |
| 26. | 030-223-003-027 | | |
| 27. | 030-223-003-028 | | |
| 28. | 030-223-003-029 | | |
| 29. | 030-223-003-030 | | |
| 30. | 030-223-003-031 | | |
| 31. | 030-223-003-032 | | |
| 32. | 030-223-003-033 | | |
| 33. | 030-223-003-034 | | |
| 34. | 030-223-003-035 | | |
| 35. | 030-223-003-036 | | |
| 36. | 030-223-003-037 | | |
| 37. | 030-227-002-001 | | |

Addendum to Real Estate Purchase and
Sale Agreement - 5

# Exhibit D

Form 35
Counteroffer Addendum
Rev. 10/07
Page 1 of 1

©Copyright 2007
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**COUNTEROFFER ADDENDUM**
**TO REAL ESTATE PURCHASE AND SALE AGREEMENT**

All terms and conditions of the offer (Real Estate Purchase and Sale Agreement) dated ___**April 23, 2010**___ , 1

concerning __15605 129th Ln SE, Yelm, WA, 98597_____ (the "Property"). 2

by, __Ronald A Wheatley and Lisa D Abramo_____, as __Buyer_____ 3

and the undersigned __Mahan Property LLC_____, as __Seller_____ 4

are accepted, except for the following changes. 5

☐ The Purchase Price shall be $ _____ 6

_____ 7

☑ Other. 8

   a. Seller will change the tax designation from "agricultural" to "residential" on 1 acre of the 9

property. Seller will (at Buyer's option) pay for 1/2 of the cost of this change on the remainder of 10

the property on the balance of the land at the time Buyer completes payment on Seller's loan. 11

Until that time, Buyer will continue the agricultural tax clasification on the 8.01 acres, per Land 12

& Acreage Addendum 22LA, Item 6c. 13

   b. Seller is not physically able to walk the boundary lines. The property has been surveyed and 14

the survey markers should be at all corners. 15

16
17
18
19
20
21
22
23
24
25
26
27

This counteroffer shall expire at 9:00 p.m. on _____ (if not filled in, the second day following the date 28
of the last signature of the counterofferor below), unless it is sooner withdrawn. Acceptance shall not be effective 29
until a signed copy is actually received by the counterofferor, their agent or at the licensed office of their agent. If this 30
counteroffer is not so accepted, it shall lapse and the Earnest Money shall be refunded to Buyer. 31

All other terms and conditions of the above offer are incorporated herein by reference as though fully set forth. 32

_____  4-27-10  _____  _____
Signature                        Date      Signature                     Date

The above counteroffer is accepted.

_____  4-28-10  _____  4-28-10
Signature         Date      Signature                     Date

Form 25
Vacant Land Purchase & Sale
Rev. 03/10
Page 1 of 5



©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**VACANT LAND PURCHASE AND SALE AGREEMENT**
**SPECIFIC TERMS**

1. **Date:** __April 25, 2010__      **MLS No.:** __41818__

2. **Buyer:** __Ronald A Wheatley & Lisa D Abramo, unmarried persons__

3. **Seller:** __Mahan Property, LLC__

4. **Property:** Tax Parcel No(s).: __21601210600__    ( __Thurston__ County)

   Street Address: __15005 129th Lane SE, Yelm__    Washington __98597__

   Legal Description: Attached as Exhibit A.

5. **Purchase Price:** $ __85,000__    __Eighty Five Thousand dollars__

6. **Earnest Money:** (To be held by ☐ Selling Broker; ☐ Closing Agent)

   Personal Check:    $ _____

   Note:    $ __1,000__    __Due upon completion of feasibility study__

   Other ( _____ ): $ _____

7. **Default:** (check only one) ☑ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies

8. **Disclosures in Form 17 or 17C:** Buyer ☑ will; ☐ will not have a remedy for Seller's negligent errors, inaccuracies, or omissions in Form 17 or 17C

9. **Title Insurance Company:** __Thurston County Title__

10. **Closing Agent:** ☐ a qualified closing agent of Buyer's choice; ☑ __Thurston County Escrow__

11. **Closing Date:** __6/15/2010__    __or sooner by agreement of both parties__

12. **Possession Date:** ☑ on Closing; ☐ Other _____

13. **Offer Expiration Date:** __4/28/2010__

14. **Services of Closing Agent for Payment of Utilities:** ☐ Requested (attach NWMLS Form 22K); ☑ Waived

15. **Charges and Assessments Due After Closing:** ☐ assumed by Buyer; ☑ prepaid in full by Seller at Closing

16. **Subdivision:** The Property: ☐ is subdivided; ☐ must be subdivided on or before _____ ;
    ☑ is not legally required to be subdivided

17. **Feasibility Contingency Expiration Date:** ☑ __30__ days after mutual acceptance; ☐ Other_____

18. **Agency Disclosure:** Selling Licensee represents: ☐ Buyer; ☐ Seller; ☑ both parties; ☐ neither party
    Listing Agent represents: ☐ Seller; ☐ both parties

19. **Addenda:** __22C(Payment Trms)__   __22D(Opt. Clauses)__   __22T(Title Cont.)__    __31(Earnest Mon.)__

   __35F(Feasibility)__   __22LA(Land & Acreag__   __42(Agency) LPB-44__   __36(County Offer)__

| | | |
|---|---|---|
| _(signature)_ | 4/25/2010 | _(signature)_ Mahan Pres   4-27-10 |
| Buyer's Signature | Date | Seller's Signature    Date |
| _Lisa D Abramo_ | 4/25/2010 | |
| Buyer's Signature | Date | Seller's Signature    Date |
| **39710 23rd Ave S** | | **12307 Vail Cut Off Rd SE** |
| Buyer's Address | | Seller's Address |
| **Roy, WA, 98580** | | **Rainier, WA, 98576** |
| City, State, Zip | | City, State, Zip |
| **360-400-0221** | | **360-446-7267** |
| Phone    Fax | | Phone    Fax |
| **roughcutsheds@fairpoint.net** | | |
| Buyer's E-mail Address | | Seller's E-mail Address |
| **Signature Srvc Real Estate, Ra**   436 | | **Signature Srvc Real Estate, Ra**   436 |
| Selling Broker   MLS Office No. | | Listing Broker   MLS Office No. |
| **Bojana Foster**   773642 | | **Bojana Foster**   773642 |
| Selling Licensee (Print)   MLS LAG No. | | Listing Agent (Print)   MLS LAG No. |
| **360-446-4646**   360-446-2400 | | **360-446-4646**   360-446-2400 |
| Phone   Fax | | Phone   Fax |

Form 25
Vacant Land Purchase & Sale
Rev. 03/10
Page 2 of 5

VACANT LAND PURCHASE AND SALE AGREEMENT
GENERAL TERMS
Continued

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

a. **Purchase Price.** Buyer agrees to pay to Seller the Purchase Price, including the Earnest Money, in cash at 1
Closing, unless otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close 2
this sale in accordance with this Agreement and is not relying on any contingent source of funds, including funds 3
from loans, the sale of other property, gifts, retirement, or future earnings, except to the extent otherwise specified 4
in this Agreement. 5

b. **Earnest Money.** Buyer agrees to deliver the Earnest Money within 2 days after mutual acceptance of this 6
Agreement to Selling Licensee who will deposit any check to be held by Selling Broker, or deliver any Earnest 7
Money to be held by Closing Agent within 3 days of receipt or mutual acceptance, whichever occurs later. If the 8
Earnest Money is held by Selling Broker and is over $10,000.00 it shall be deposited into an interest bearing trust 9
account in Selling Broker's name provided that Buyer completes an IRS Form W-9. Interest, if any, after 10
deduction of bank charges and fees, will be paid to Buyer. Buyer agrees to reimburse Selling Broker for bank 11
charges and fees in excess of the interest earned, if any. If the Earnest Money held by Selling Broker is over 12
$10,000.00 Buyer has the option to require Selling Broker to deposit the Earnest Money into the Housing Trust 13
Fund Account, with the interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the 13
Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the Earnest Money or the Earnest 14
Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund Account. Selling 15
Broker may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be 16
refunded to Buyer and any such costs remain unpaid, the Selling Broker or Closing Agent may deduct and pay 17
them therefrom. The parties instruct Closing Agent to: (1) provide written verification of receipt of the Earnest 18
Money and notice of dishonor of any check to the parties and Licensees at the addresses and/or fax numbers 19
provided herein; and (2) commence an interpleader action in the county in which the Property is located within 30 20
days of a party's demand for the Earnest Money unless the parties agree otherwise in writing. The parties 21
authorize the party commencing an interpleader action to deduct up to $250.00 for the costs thereof. 22

c. **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at 23
Closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and 24
restrictions, presently of record and general to the area; easements and encroachments, not materially affecting 25
the value of or unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining 26
rights. Monetary encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before 27
Closing. Title shall be conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's 28
interest in a Real Estate Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract 29
sufficient to convey after acquired title. If the Property has been short platted, the Short Plat number is in the 30
Legal Description. 31

d. **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then- 32
current ALTA form of standard form owner's policy of title insurance, with homeowner's additional protection and 33
inflation protection endorsements if available at no additional cost, from the Title Insurance Company. If Seller 34
previously received a preliminary commitment from a Title Insurance Company that Buyer declines to use, Buyer 35
shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party applying for 36
title insurance agrees to pay any title cancellation fee, in the event such a fee is assessed. The Title Insurance 37
Company shall send a copy of the preliminary commitment to Seller, Listing Agent, Buyer and Selling Licensee. 38
The preliminary commitment, and the title policy to be issued, shall contain no exceptions other than the General 39
Exclusions and Exceptions in said standard form and Special Exceptions consistent with the Condition of Title 40
herein provided. If title cannot be made so insurable prior to the Closing Date, then as Buyer's sole and exclusive 41
remedy, the Earnest Money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the 42
Buyer, less any unpaid costs described in this Agreement, and this Agreement shall thereupon be terminated. 43
Buyer shall have no right to specific performance or damages as a consequence of Seller's inability to provide 44
insurable title. 45

e. **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. "Closing" means 46
the date on which all documents are recorded and the sale proceeds are available to Seller. If the Closing Date 47
falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is 48
closed, the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, 49
or day when the county recording office is closed. Buyer shall be entitled to possession at 9:00 p.m. on the 50
Possession Date. Seller agrees to maintain the Property in its present condition, normal wear and tear excepted, 51
until the Buyer is entitled to possession. 52

f. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 53
1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind exchange so 54

Initials: BUYER: _RAW_    Date: _4-25-10_   SELLER: _Jon_   Date: _4-27-01_
       BUYER: _CW_    Date: _4-25-10_   SELLER: _____   Date: _____

Form 25
Vacant Land Purchase & Sale
Rev. 03/10
Page 3 of 5

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**VACANT LAND PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including 55
attorneys' fees and costs) incurred by the cooperating party that are related only to the exchange are paid or 56
reimbursed to the cooperating party at or prior to Closing. Notwithstanding the Assignment paragraph of this 57
Agreement, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified 58
intermediary or any entity set up for the purposes of completing a reverse exchange. 59

g.  **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of 60
the escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, 61
interest, and lienable homeowner's association dues shall be prorated as of Closing. Buyer agrees to pay Buyer's 62
loan costs, including credit report, appraisal charge and lender's title insurance, unless provided otherwise in this 63
Agreement. If any payments are delinquent on encumbrances which will remain after Closing, Closing Agent is 63
instructed to pay such delinquencies at Closing from money due, or to be paid by, Seller. Buyer agrees to pay for 64
remaining fuel in the fuel tank if, prior to Closing, Seller obtains a written statement as to the quantity and current 65
price from the supplier. Seller agrees to pay all utility charges, including unbilled charges. Unless waived in 66
Specific Term No. 14, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to 67
satisfy unpaid utility charges in accordance with RCW 60.80 and Seller agrees to provide the names and 68
addresses of all utilities providing service to the Property and having lien rights (attach NWMLS Form 22K 69
Identification of Utilities or equivalent). Buyer is advised to verify the existence and amount of any local 70
improvement district, capacity or impact charges or other assessments that may be charged against the Property 71
before or after Closing. Seller will pay such charges that are encumbrances at the time of Closing, or that are or 72
become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid as 73
agreed in Specific Term No. 15. 74

h.  **Sale Information.** The Listing Agent or Selling Licensee is authorized to report this Agreement (including price 75
and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, 76
appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, 77
appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Agent and/or Selling 78
Licensee, on request, any and all information and copies of documents concerning this sale. 79

i.  **FIRPTA - Tax Withholding at Closing.** The Closing Agent is instructed to prepare a certification (NWMLS Form 80
22E or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign Investment in Real 81
Property Tax Act. Seller agrees to sign this certification. If Seller is a foreign person, and this transaction is not 82
otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the 83
Internal Revenue Service. 84

j.  **Notices.** In consideration of the license to use this and NWMLS's companion forms and for the benefit of the 85
Listing Agent and the Selling Licensee as well as the orderly administration of the offer, counteroffer or this 86
agreement, the parties irrevocably agree that unless otherwise specified in this Agreement, any notice required or 87
permitted in, or related to, this Agreement (including revocations of offers or counteroffers) must be in writing. 88
Notices to Seller must be signed by at least one Buyer and shall be deemed given only when the notice is 89
received by Seller, by Listing Agent or at the licensed office of Listing Agent. Notices to Buyer must be signed by 90
at least one Seller and shall be deemed given only when the notice is received by Buyer, by Selling Licensee or at 91
the licensed office of Selling Licensee. Actual receipt by Selling Licensee of a Form 17 or 17C (whichever is 92
applicable), Public Offering Statement or Resale Certificate, homeowners' association documents provided 93
pursuant to NWMLS Form 22D, or a preliminary commitment for title insurance provided pursuant to NWMLS 94
Form 22T shall be deemed receipt by Buyer. Selling Licensee and Listing Agent have no responsibility to advise 95
of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's 96
address shown on this Agreement. Buyer and Seller must keep Selling Licensee and Listing Agent advised of 97
their whereabouts in order to receive prompt notification of receipt of a notice. 98

k.  **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and 99
stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 100
p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a 101
Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the 102
next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less shall not include 103
Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the 104
event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday 105
as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is 106
not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. If the parties agree upon 107
and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for 108

Initials: BUYER: _____ Date: 4-25-10 SELLER: _____ Date: 4-27-10
         BUYER: _____ Date: 4-25-10 SELLER: _____ Date: _____

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**VACANT LAND PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted 109
offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence 110
of this Agreement. 111

l. **Facsimile or E-mail Transmission.** Facsimile transmission of any signed original document, and retransmission 112
of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, or 113
the Closing Agent, the parties will confirm facsimile transmitted signatures by signing an original document. E-mail 113
transmission of any document or notice shall not be effective unless the parties to this Agreement otherwise 114
agree in writing. 115

m. **Integration.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or 116
contemporaneous understandings and representations. No modification of this Agreement shall be effective 117
unless agreed in writing and signed by Buyer and Seller. 118

n. **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written 119
consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line 120
identifying the Buyer on the first page of this Agreement. 121

o. **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the 122
following provision, as identified in Specific Term No. 7, shall apply: 123

   i. **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of 124
   the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for 125
   such failure. 126

   ii. **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated 127
   damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for 128
   Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental 129
   damages, or (d) pursue any other rights or remedies available at law or equity. 130

p. **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and 131
a certified public accountant to review the terms of this Agreement. Buyer and Seller agree to pay their own fees 132
incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement 133
the prevailing party is entitled to reasonable attorneys' fees and expenses. 134

q. **Offer.** Buyer agrees to purchase the Property under the terms and conditions of this Agreement. Seller shall have 135
until 9:00 p.m. on the Offer Expiration Date to accept this offer, unless sooner withdrawn. Acceptance shall not be 136
effective until a signed copy is actually received by Buyer, by Selling Licensee or at the licensed office of Selling 137
Licensee. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 138

r. **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of the 139
Seller's name, shall be considered a counteroffer. If a party makes a counteroffer, then the other party shall have 140
until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. 141
Acceptance shall not be effective until a signed copy is actually received by Seller, by Listing Agent or at the 142
licensed office of Listing Agent. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall 143
be refunded to Buyer. 144

s. **Offer and Counteroffer Expiration Date.** If no expiration date is specified for a offer/counteroffer, the 145
offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the 146
offer/counteroffer, unless sooner withdrawn. 147

t. **Agency Disclosure.** Selling Broker represents the same party that Selling Licensee represents. Listing Broker 148
represents the same party that the Listing Agent represents. If Selling Licensee and Listing Agent are different 149
salespersons affiliated with the same Broker, then both Buyer and Seller confirm their consent to that Broker 150
representing both parties as a dual agent. If Selling Licensee and Listing Agent are the same salesperson 151
representing both parties then both Buyer and Seller confirm their consent to that salesperson and his/her Broker 152
representing both parties as dual agents. All parties acknowledge receipt of the pamphlet entitled "The Law of 153
Real Estate Agency." 154

u. **Commission.** Seller and Buyer agree to pay a commission in accordance with any listing or commission 155
agreement to which they are a party. The Listing Broker's commission shall be apportioned between Listing 156
Broker and Selling Broker as specified in the listing. Seller and Buyer hereby consent to Listing Broker or Selling 157
Broker receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Broker and 158
Selling Broker, as applicable, a portion of their funds in escrow equal to such commission(s) and irrevocably 159
instruct the Closing Agent to disburse the commission(s) directly to the Broker(s). In any action by Listing or 160

Initials: BUYER: _____ Date: 4-25-10 SELLER: _____ Date: 4-27-10

       BUYER: _____ Date: 4-25-10 SELLER: _____ Date: _____

Form 25
Vacant Land Purchase & Sale
Rev. 03/10
Page 5 of 5

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**VACANT LAND PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

Selling Broker to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' 161
fees. Seller and Buyer agree that the Licensees are intended third party beneficiaries under this Agreement. 162

**v. Feasibility Contingency.** It is the Buyer's responsibility to verify before the Feasibility Contingency Expiration Date 163
identified in Specific Term No. 17 whether or not the Property can be platted, developed and/or built on (now or in the 163
future) and what it will cost to do this. BUYER SHOULD NOT RELY ON ANY ORAL STATEMENTS concerning this 164
made by the Seller, Listing Agent or Selling Licensee. Buyer should inquire at the city or county, and water, sewer or other 165
special districts in which the Property is located. Buyer's inquiry should include, but not be limited to: building or 166
development moratoriums applicable to or being considered for the Property; any special building requirements, including 167
setbacks, height limits or restrictions on where buildings may be constructed on the Property; whether the Property is 168
affected by a flood zone, wetlands, shorelands or other environmentally sensitive area; road, school, fire and any other 169
growth mitigation or impact fees that must be paid; the procedure and length of time necessary to obtain plat approval 170
and/or a building permit; sufficient water, sewer and utility and any service connection charges; and all other charges that 171
must be paid. Buyer and Buyer's agents, representatives, consultants, architects and engineers shall have the 172
right, from time to time during the feasibility contingency, to enter onto the Property and to conduct any tests or 173
studies that Buyer may need to ascertain the condition and suitability of the Property for Buyer's intended 174
purpose. Buyer shall restore the Property and all improvements on the Property to the same condition they were 175
in prior to the inspection. Buyer shall be responsible for all damages resulting from any inspection of the Property 176
performed on Buyer's behalf. If the Buyer does not give notice to the contrary on or before the Feasibility 177
Contingency Expiration Date identified in Specific Term No. 17, it shall be conclusively deemed that Buyer is 178
satisfied as to development and/or construction feasibility and cost. If Buyer gives notice this Agreement shall 179
terminate and the Earnest Money shall be refunded to Buyer, less any unpaid costs. 180

**w. Subdivision.** If the Property must be subdivided, Seller represents that there has been preliminary plat approval 181
for the Property and this Agreement is conditioned on the recording of the final plat containing the Property on or 182
before the date specified in Specific Term 16. If the final plat is not recorded by such date, this Agreement shall 183
terminate and the Earnest Money shall be refunded to Buyer. 184

**x. Information Verification Period and Property Condition Disclaimer.** Buyer shall have 10 days after mutual 185
acceptance to verify all information provided from Seller or Listing Agent related to the Property. This contingency 186
shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within 10 187
days of mutual acceptance. If Buyer gives timely notice under this section, then this Agreement shall terminate 188
and the Earnest Money shall be refunded to Buyer. Buyer and Seller agree, that except as provided in this 189
Agreement, all representations and information regarding the Property and the transaction are solely from the 190
Seller or Buyer, and not from any Licensee. The parties acknowledge that the Licensees are not responsible for 191
assuring that the parties perform their obligations under this Agreement and that none of the Licensees have 192
agreed to independently investigate or confirm any matter related to this transaction except as stated in this 193
Agreement, or in a separate writing signed by such Licensee. In addition, Licensees do not guarantee the value, 194
quality or condition of the Property and some properties may contain building materials, including siding, roofing, 195
ceiling, insulation, electrical, and plumbing, that have been the subject of lawsuits and/or governmental inquiry 196
because of possible defects or health hazards. Some properties may have other defects arising after construction, 197
such as drainage, leakage, pest, rot and mold problems. Licensees do not have the expertise to identify or assess 198
defective products, materials, or conditions. Buyer is urged to retain inspectors qualified to identify the presence 199
of defective materials and evaluate the condition of the Property. Licensees may assist the parties with locating 200
and selecting third party service providers, such as inspectors or contractors, but Licensees cannot guarantee or 201
be responsible for the services provided by those third parties. The parties agree to exercise their own judgment 202
and due diligence regarding third-party service providers. 203

**y. Disclosures in Form 17 or 17C.** If Seller provides Buyer with a disclosure statement pursuant to RCW 64.06 204
(Form 17 or 17C, whichever is applicable), Buyer may bring an action in tort to recover economic losses resulting 205
from intentional misrepresentations in Form 17 or 17C; and if the parties so agree in Specific Term No. 8, Buyer 206
may bring an action in tort to recover economic losses resulting from negligent errors, inaccuracies, or omissions 207
in Form 17 or 17C. Nevertheless, Buyer is advised to use due diligence to inspect the Property to Buyer's 208
satisfaction, as Seller may not know or have reason to know of defects that careful inspections might reveal. If, in 209
Specific Term No. 8, the parties agree that Buyer will not have a remedy for economic loss resulting from 210
negligent errors, inaccuracies, or omissions in Form 17 or 17C, then Buyer assumes the risk of economic loss 211
that may result from Seller's negligent misrepresentation in Form 17 or 17C. Buyer maintains the right to bring 212
any and all claims permitted under the common law, including fraudulent concealment. Buyer and Seller 213
acknowledge that home protection plans may be available which may provide additional protection and benefit to 214
Buyer and Seller. 215

Initials: BUYER: _RAW_ Date: _4 25 10_ SELLER: _7M_ Date: _4-27-16_
BUYER: _____ Date: _4/25/10_ SELLER: _____ Date: _____

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Form 22D
Optional Clauses Addendum
Rev. 5/09
Page 1 of 2

**OPTIONAL CLAUSES ADDENDUM TO
PURCHASE & SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated ____**April 25, 2010**____ 1

between **Ronald A Wheatley & Lisa D Abramo** ("Buyer") 2

and **Mahan Property, LLC** ("Seller") 3

concerning **15005 129th Lane SE, Yelm, WA 98597** (the "Property"). 4

5

**CHECK IF INCLUDED:**

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Agent and Selling Licensee make no representations 6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of 7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on 8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and 9
encroachments to Buyer's own satisfaction within the inspection contingency period. 10

2. ☑ **Standard Form Owner's Policy of Title Insurance.** Notwithstanding the "Title Insurance" clause in the 11
Agreement, Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then- 12
current ALTA form of Owner's Policy of Title Insurance, together with homeowner's additional protection and 13
inflation protection endorsements if available at no additional cost, from the Title Insurance Company rather 14
than the Homeowner's Policy of Title Insurance. 15

3. ☐ **Extended Coverage Title Insurance.** Notwithstanding the "Title Insurance" clause in this Agreement, 16
Buyer's lender or Closing Agent is directed to apply for an ALTA or comparable extended coverage policy of 17
title insurance, rather than the policy provided for in the purchase and sale agreement. Buyer shall pay the 18
increased costs associated with the extended coverage policy including excess premium over that charged 19
for the policy provided for in the purchase and sale agreement and the cost of any survey required by the title 20
insurer. 21

4. ☑ **Property And Grounds Maintained.** Until possession is transferred to Buyer, Seller agrees to maintain the 22
Property in the same condition as when initially viewed by Buyer. The term "Property" includes the building(s); 23
grounds; plumbing, heat, electrical and other systems; and all included items. Should an appliance or system 24
become inoperative or malfunction prior to transfer of possession, Seller agrees to either repair, or replace the 25
same with an appliance or system of at least equal quality. Buyer reserves the right to reinspect the Property 26
within 5 days prior to transfer of possession to verify the foregoing. Buyer and Seller understand and agree 27
that the Listing Agent and Selling Licensee shall not, under any circumstances, be liable for the foregoing or 28
Seller's breach of this clause. 29

5. ☑ **Items Left by Seller.** Any personal property, fixtures or other items remaining on the Property when 30
possession is transferred to Buyer shall thereupon become the property of the Buyer, and may be retained or 31
disposed of as Buyer determines. However, Seller agrees to clean the interiors of any structures and remove 32
all trash, debris and rubbish on the Property prior to Buyer taking possession. 33

34

6. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to a:

☐ public water main; ☐ public sewer main; ☐ septic tank; ☐ well (specify type) _____ ; 35

☐ irrigation water (specify provider) _____ ; ☐ natural gas; ☑ telephone; 36
*@ Road*

☐ cable; ☑ electricity; ☐ other _____ . 37
*@ Road*

Initials: BUYER: _~~(sig)~~_ Date: _4·25·10_ SELLER: _Tm_ Date: _4-27-10_

BUYER: _~~(sig)~~_ Date: _4-25-10_ SELLER: _____ Date: _____

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**OPTIONAL CLAUSES ADDENDUM TO**
**PURCHASE & SALE AGREEMENT**
*Continued*

7. ☐ **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require 38
the following to be filled in. If Insulation has not yet been selected, FTC regulations require Seller to furnish 39
Buyer the information below in writing as soon as available: 40

WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____ 41

CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____ 42

OTHER INSULATION DATA: _____ 43

8. ☐ **Leased Property.** Buyer hereby acknowledges that Seller leases the following items of personal property, 44
possession of which shall pass to Buyer on Closing: 45

☐ propane tank; ☐ security system; ☐ satellite dish; ☐ other _____ 46

Buyer shall assume the lease for the items selected, perform all of the obligations of the lease, and hold 47
Seller harmless from and against any further obligation, liability, or claim arising from the lease. 48

9. ☑ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 49
other association, then Seller shall provide Buyer a copy of the following documents (if available from the 50
Association) within _____ days (10 days if not filled in) of mutual acceptance: 51

1. Association rules and regulations, including, but not limited to architectural guidelines; 52
2. Association meeting minutes from the prior two (2) years; 53
3. Association Board of Directors meeting minutes from the prior six (6) months; and 54
4. Association financial statements from the prior two (2) years. 55

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not filled 56
in) of receipt of the above documents or the date that the above documents are due, then this homeowners' 57
association review period shall conclusively be deemed satisfied (waived). If Buyer gives timely notice of 58
disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 59

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 60
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 61
removal of the Excluded Item(s). Excluded Item(s): 62

_____ 63
_____ 64
_____ 65
_____ 66
_____ 67

11. ☑ **Other.**

a. Buyer has a home based business building cedar storage sheds which uses a portable saw 68
mill. Buyer intends to continue operating his ~~business~~ business on this site. 69

b. This offer is conditioned on court approval to be obtained within 2 weeks of offer 70
acceptance. 71

c. Seller will show boundary lines to Breyer 72
within 1 week of offer acceptance. 73
74
75
76

Initials: BUYER: _R.B.M_ Date: _4-25-10_ SELLER: _JM_ Date: _5-27-10_

BUYER: _PB_ Date: _4-25-10_ SELLER: _____ Date: _____

**PAYMENT TERMS ADDENDUM**
**TO PURCHASE AND SALE AGREEMENT**

©Copyright 2003
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated _____ **April 25, 2010** _____ 1

between __**Ronald A Wheatley & Lisa D Abramo**__ ("Buyer") 2

and __**Mahan Property, LLC**__ ("Seller") 3

concerning __15005 129th Lane SE, Yelm, WA 98597__ (the "Property"). 4

**METHOD OF PAYMENT** (Check and complete each applicable paragraph). 5

☐ **NOTE AND DEED OF TRUST.** Buyer agrees to pay $ _____ 6
down, including Earnest Money, at Closing and the balance of the Purchase Price to Seller in monthly 7
Installments of $ _____ or more at Buyer's option, including Interest from the 8
date of Closing at the rate of _____ % per annum on the unpaid principal, on or before 9
the _____ day of each month, commencing: ☐ 30 days following the Closing 10
☐ _____. This indebtedness shall be evidenced by a Promissory Note and a 11
☐ first position ☐ second position (first, if not filled in) Deed of Trust, as set forth below. 12

**Due Date.** The entire balance of principal and interest shall be due and payable ☐ _____ 13
years from the date of Closing ☐ on _____ 14

**Default and Default Interest.** The principal shall bear interest at the rate of _____ % per annum (18% if not 15
filled in) or the maximum rate allowed by law, whichever is less, during any period of Buyer's default, A late 16
charge of $ _____ or _____ % of the installment payment (5% of the installment 17
payment if neither is filled in) shall be added to any installment payment more than _____ days late 18
(15 days if not filled in). If Buyer has not cured any default within _____ (30 days if not filled in) after 19
written notice, Seller may declare all outstanding sums immediately due and payable. 20

**Promissory Note.** Buyer agrees to sign at Closing the NWMLS Form 22M Promissory Note (revised 7/98 or 21
later) (LPB Form 28A) and LPB Form 22 Deed of Trust securing the Property, or an equivalent form, which must 22
be attached to this Agreement. 23

**Due on Sale.** Unless the Commercial Property clause is initialed by Buyer and Seller, the Due on Sale clause is 24
the only optional clause that applies. The following language shall be added to the form Deed of Trust: 25

This Property may not be sold or transferred without Beneficiary's consent. Upon breach of this provision, 26
Beneficiary may declare all sums secured by this Deed of Trust immediately due and payable, unless 27
prohibited by applicable law. 28

(NOTE: If the Property is primarily for agricultural purposes, then a nonjudicial foreclosure/forfeiture remedy is 29
available only by using a real estate contract.) 30

☑ **REAL ESTATE CONTRACT.** Buyer agrees to pay $___**20,000**___ down, including Earnest Money, at 31
Closing and the balance of the Purchase Price in monthly installments to Seller of $ ___**543.69**___ 32
or more at Buyer's option, including Interest from the date of Closing at the rate of ___**8**___ % 33
per annum on the declining principal balance, on or before the _____ day of each month, commencing: 34
☑ 30 days following the Closing of this sale ☐ _____. The first payment shall be 35
adjusted to include any interest accrued. The parties agree to sign Limited Practice Board Form 44 Real Estate 36
Contract securing the Property which must be attached to this Agreement. The "Due on Sale" clause is the only 37
optional clause which will apply unless other optional clauses are initialed by both parties. In addition, the 38
following shall be added to the form Real Estate Contract: "It is further agreed that Buyer will pay real estate taxes 39
and hazard insurance as they come due, and that Buyer will provide Seller with evidence of those payments." 40

☐ **Cash Out.** The entire balance of principal and interest shall be due and payable: ☑ ___**7**___ 41
years from the date of Closing ☐ on _____. 42

Initials: BUYER: _(signature)_ Date: 4-25.10 SELLER: _(signature)_ Date: 4-27-10
BUYER: _(signature)_ Date: 4-25-10 SELLER: _____ Date: _____

**PAYMENT TERMS ADDENDUM
TO PURCHASE AND SALE AGREEMENT**
*Continued*

©Copyright 2003
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

☐ **CASH DOWN TO EXISTING LOAN.** Buyer agrees to assume, at Closing, an existing ☐ Deed of Trust 43
☐ Mortgage ☐ Real Estate Contract securing the Property and to pay the balance of the Purchase Price in cash, 44
including Earnest Money, at Closing. Seller guarantees that such obligation is assumable provided that Buyer 45
complies with and agrees to abide by any requirements or conditions imposed by the holder of the obligation to be 46
assumed. Seller understands that when a loan is "assumed," the Seller remains liable to pay the lender if the 47
Buyer fails to do so. The assumed loan ☐ is ☐ is not an Adjustable Rate Mortgage (ARM). The monthly payments 48
could increase or decrease if the assumed loan is an ARM. The assumed loan has a principal balance of 49
approximately $ _____ and is payable in monthly installments of approximately 50
$ _____ including interest at _____ % per annum computed on the 51
declining principal balance, and including ☐ real estate taxes ☐ hazard insurance. Seller authorizes Closing 52
Agent to pay any delinquent payments from money due Seller at time of Closing. 53

☐ **SELLER WRAP OF EXISTING LOAN.** Buyer agrees to pay $ _____ down including the Earnest 54
Money, at Closing and the balance to Seller in monthly installments of $ _____, or more at Buyer's 55
option, including interest at _____ % per annum computed on the unpaid principal, commencing 56
☐ 30 days following Closing ☐ _____. The then unpaid principal balance shall, at Seller's option, 57
bear interest at the rate of _____ % per annum (18% if not filled in) or the maximum rate allowed by law, 58
whichever is less, during any period of Buyer's default. From the payments by Buyer to Seller, Seller will pay the 59
monthly payments of $ _____ due on an existing loan by _____ 60
(the lender) having an approximate present principal balance of $ _____ with interest at _____ % 61
per annum computed on the unpaid principal and secured by the Property. Such balance remains the obligation 62
of the Seller and Seller agrees to pay such obligation in accordance with its terms and conditions. Buyer shall 63
have the right to remedy any default on the underlying obligation, provided Buyer is not in default to the Seller, 64
and all sums so paid shall be credited to Buyer's payments to Seller. Buyer and Seller agree to sign, at Closing, 65
the form ☐ Real Estate Contract ☐ Note and Deed of Trust, securing the Property which must be attached to this 66
Agreement. 67

☒ **PAYMENTS TO COLLECTION ACCOUNT.** The above payments are to be made to a contract collection account 68
at **Thurston County True Escrow** Bank, **Olympia** Branch, to be 69
established and paid for by Buyer and Seller equally. 70

☐ **CREDIT REPORT CONTINGENCY.** This Agreement is subject to Seller's approval of Buyer's credit report, which 71
approval shall not be unreasonably withheld. Buyer agrees to order a credit report and deliver said credit report to 72
Seller within _____ days (7 days if not filled in) of mutual acceptance of this Agreement. Unless Seller gives 73
written notice to Buyer of Seller's disapproval of Buyer's credit report within _____ days (2 days if not filled 74
in) of receipt of credit report, this contingency shall be deemed satisfied and will no longer be a part of this 75
Agreement. 76

☐ **TITLE INSURANCE.** Buyer agrees to pay the costs of a lender's standard title insurance policy insuring Seller's 77
security interest. 78

**CONSENT OF HOLDER OF UNDERLYING OBLIGATION.** If there is an existing Deed of Trust, Real Estate Contract 79
or other encumbrance which is to remain unpaid after Closing and its terms require the holder's consent to this sale, 80
Buyer agrees to promptly apply for such consent upon mutual acceptance of this Agreement. This Agreement is sub- 81
ject to the written consent of the holder of the underlying obligation within _____ days (15 days if not filled 82
in) after the mutual acceptance of this Agreement. If the holder's written consent to this Agreement is not obtained by 83
such date, this Agreement shall terminate, and the Earnest Money shall be refunded to Buyer. 84

Initials: BUYER: _____ Date: 4-25-10  SELLER: _____ Date: 4-27-10
BUYER: _____ Date: 4-25-10  SELLER: _____ Date: _____

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# LAND AND ACREAGE ADDENDUM

The following is part of the Purchase and Sale Agreement dated __**April 25, 2010**__   1

between **Ronald A Wheatley & Lisa D Abramo** _____ ("Buyer") 2

and **Mahan Property, LLC** _____ ("Seller") 3

concerning **15005 129th Lane SE, Yelm, WA 98597** _____ (the "Property"). 4

1. **BUYER ACKNOWLEDGMENTS:** If Buyer has any questions regarding the Property. Buyer is advised to make 5
the Agreement subject to relevant inspections, tests, surveys, and/or reports. BUYER ACKNOWLEDGES: 6

   a. Buyer has observed and investigated the Property and has reached Buyer's own conclusions as to the 7
   adequacy, acceptability, and suitability of the Property and surrounding area, and the feasibility and 8
   desirability of acquiring the Property for Buyer's intended use, based solely on Buyer's examination of the 9
   Property. 10

   b. A generally accepted method for identifying boundary lines and verifying the size of the Property is to have 11
   the Property surveyed, and corners identified and marked. A survey will confirm that the legal description is 12
   accurate and that any presumed fences or other boundary markings are correctly located. Neither the Listing 13
   Agent nor the Selling Licensee shall be responsible for any discrepancies in boundary lines, information 14
   regarding the size of the Property, identification of easements or encroachment problems. 15

   c. A generally accepted method for determining whether on-site sewage disposal systems may be installed on 16
   the Property is to have tests performed, such as "perc" tests, which are approved by the county for limited 17
   time periods. Except as otherwise provided in the Agreement, Buyer assumes the risk that the Property is 18
   suitable for any needed on-site sewage disposal system and related equipment. 19

   d. A generally accepted method for determining water quality from any well or other water delivery system is to 20
   have tests conducted by professionals certified by the Department of Ecology for items such as bacteria and 21
   nitrates, and a generally accepted method for determining water quantity produced by a well is to have a test 22
   conducted by experts to determine gallons per minute. Buyer understands that the results of such tests only 23
   provide information regarding water quality or quantity at the time of the test(s) and provide no representation 24
   or guarantee that results will not change or vary at other times. 25

   e. If the Property is currently taxed at a reduced rate because a special classification such as open space, 26
   agricultural, or forest land, and Buyer is to continue that use, Buyer understands approval from the county will 27
   need to be obtained and that significant increased taxes, back taxes, penalties and interest may be required 28
   to be paid if the use classification is changed or withdrawn at Closing or in the future. 29

   f. A generally accepted method for determining the value of timber growing on the Property is to have a 30
   qualified forester or forest products expert "cruise" the Property and give a written valuation. 31

   g. If there is an on-site sewage disposal system on the Property and the system has not been recently used, 32
   Buyer should consider conducting a purge test and other inspections to determine whether there are any 33
   defects in the system. 34

   h. Additional tests or inspections of the Property may be required by local or state governmental agencies before 35
   title to the Property is transferred. 36

Initials: BUYER: _____ Date: _4·25 00_ SELLER: _7m_ Date: _4-27-10_
BUYER: _____ Date: _4-25-10_ SELLER: _____ Date: _____

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## LAND AND ACREAGE ADDENDUM
*Continued*

2. **CONTINGENCIES:**                                                                                                     37

   a. **General Contingency Provisions.** This Agreement is conditioned on the applicable contingencies below. 38
The work to be performed shall be timely ordered by the party responsible for payment, except for the 39
Feasibility Study (if applicable), and shall be performed by qualified professionals. If Seller is responsible for 40
ordering the work and fails to timely do so, Seller will be in breach of the Agreement.                                   41

   b. **Contingency Periods.** The applicable contingency periods shall commence on mutual acceptance of the 42
Agreement. If Buyer gives notice of disapproval and termination of the Agreement within the applicable 43
contingency period, the Earnest Money shall be refunded to Buyer. If Buyer fails to give timely notice within 44
the applicable contingency period, then the respective contingency shall be deemed waived.                                45

   c. **Contingencies.** Items checked below are to be paid by Buyer or Seller as indicated below and are 46
contingencies to the Agreement. Notwithstanding the payment allocation provided for herein, if the Agreement 47
fails to close as a consequence of a Seller's breach, the costs of the following shall be borne by the Seller:          48

| Paid by Buyer | Paid by Seller | | | Contingency period (10 days if not filled in) | |
|:---:|:---:|---|---|:---:|---|
| ☐ | ☐ | i. | **Survey.** Completion of survey to verify information regarding the Property as listed in 1(b). | _____ days | 49<br>50<br>51<br>52 |
| ☑ | ☐ | ii. | **Perc Test.** Perc or similar test indicating that the Property is suitable for installation of conventional septic system and drainfield. If the sale fails to close, the party who paid for the perc test shall fill in holes at their expense within two weeks of the date the transaction is terminated. Earnest Money shall not be refunded to Buyer until perc holes are filled in if this is Buyer's responsibility. | **30** days | 53<br>54<br>55<br>56<br>57<br>58<br>59<br>60 |
| ☐ | ☐ | iii. | **On-Site Sewage System.** The system to be pumped and inspected by a qualified professional to determine that the system is readily accepting effluent and the system has no apparent defects. (If VA Financing is used, Lender may require certification of system.) | _____ days | 61<br>62<br>63<br>64<br>65 |
| ☐ | ☐ | iv. | **Water Quality.** Water quality and/or purity tests showing water meets the approval standards of the Department of Ecology and the standards of the governing county. Water quality tests to be performed by a qualified professional. | _____ days | 66<br>67<br>68<br>69<br>70 |
| ☐ | ☐ | v. | **Water Quantity.** Water quantity tests (4 hour draw down test or other test selected by Buyer) showing a sustained flow of _____ g. p. m., which Buyer agrees will be adequate to reasonably meet Buyer's needs. Water quantity test to be performed by a qualified professional. | _____ days | 71<br>72<br>73<br>74<br>75<br>76 |
| ☐ | ☐ | vi. | **Timber.** Timber cruise conducted by a qualified forest products expert of Buyer's choice, with results of the cruise to be satisfactory to Buyer in Buyer's sole discretion. | _____ days | 77<br>78<br>79<br>80 |

Initials: BUYER: _____ Date: _4-25-10_ SELLER: _____ Date: _4-27-10_

          BUYER: _____ Date: _4-25-10_ SELLER: _____ Date: _____

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**LAND AND ACREAGE ADDENDUM**
*Continued*

81

3. **ADDITIONAL PROVISIONS** (check as applicable)

☑ **Feasibility Study.** If this box is checked, this paragraph supersedes and replaces the Feasibility Contingency 82
set forth in Specific Term 17 and General Term "v" of Form 25 (Vacant Land Purchase and Sale Agreement). 83
Completion of a feasibility study and determination, in Buyer's sole discretion, that the Property and any 84
matters affecting the Property including, without limitation, the condition of any improvements to the Property, 85
the condition and capacity of irrigation pumps, system and wells, the adequacy of water rights for the Property, 86
the licensure of wells, permitted or certificated water rights for the Property, the location and size of any critical 87
area on the Property, the number and location of approved road approaches from public roads, and the 88
presence of recorded access easements to the Property, are suitable for Buyer's intended use(s), and that it is 89
feasible and advantageous for Buyer to acquire the Property in accordance with the Agreement. In performing 90
any investigations, Buyer shall not interfere with any existing tenants' operations on the Property. 91

This feasibility study contingency shall conclusively be deemed waived unless within ___**30**___ (10 days if 92
not filled in) after mutual acceptance, Buyer gives notice disapproving the feasibility study. If Buyer timely 93
disapproves the feasibility study and terminates the Agreement, the Earnest Money shall be refunded to Buyer. 94

☐ **Irrigation and Water** Seller warrants that there are _____ shares of _____ irrigation water rights 95
and _____ shares of _____ frost water rights applicable to the Property, all of which will be 96
transferred to Buyer at Closing. 97

☐ **Assignment and Assumption.** At Closing, Seller will assign, transfer, and convey all of its right, title and 98
interest in, to and under any lease of the Property and will represent and warrant to Buyer that, as of the 99
Closing Date, there are no defaults under the leases and no condition exists or event has occurred or failed to 100
occur that with or without notice and the passage of time could ripen into such a default. At Closing, Buyer will 101
agree to defend, indemnify and hold Seller harmless from and against any obligation under the leases to the 102
extent delegated to and assumed by Buyer hereunder. 103

☑ **Attorney Review.** This Agreement is conditioned on review and approval by the parties' attorneys on or 104
before ___**14**___. A party shall conclusively be deemed to have waived this contingency unless 105
notice in conformance with this Agreement is provided to the other party by the foregoing date. 106

☐ **Crops.** Unless otherwise agreed in writing Seller has the right to harvest all growing crops in the ordinary 107
course of business until the possession date. 108

☐ **Accessories.** The indicated accessories are items included in addition to those stated in Specific Term 5 of 109
the Agreement: ☐ portable buildings ☐ sheds and other outbuildings ☐ game feeders ☐ livestock feeders 110
and troughs ☐ irrigation equipment ☐ fuel tanks ☐ submersible pumps ☐ pressure tanks ☐ corrals and 111
pens ☐ gates and fences ☐ chutes ☐ other: _____ . 112

The value assigned to the personal property included in the sale shall be $ _____ . 113
Seller warrants title to, but not the condition of, the personal property and shall convey it by bill of sale. 114

☐ **CRP Program.** Buyer must assume all Conservation Reserve Program contracts and agree to continue them 115
through the expiration date of each such contract. All documentation for the assumption will be completed at 116
closing and must be approved by Farm Service Agency of the USDA prior to Closing. Any Conservation 117
Reserve Program payments shall be prorated as of Closing. 118

Initials: BUYER: *PMN* _____ Date: *4-25-10* SELLER: *7M* _____ Date: *4-27-11*
BUYER: *XX* _____ Date: *4-25-10* SELLER: _____ Date: _____

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## LAND AND ACREAGE ADDENDUM
*Continued*

☐ 4. **DOCUMENT REVIEW PERIOD.** If this box is checked, Seller shall deliver to Buyer a copy of the following 119
documents within _____ (20 days if not filled in) of mutual acceptance: 120

_____ 121

_____ . 123

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (15 days if 124
not filled in) of receipt of the above documents or the date that the above documents are due, then this 125
document review period shall conclusively be deemed satisfied (waived). If Buyer gives timely notice of 126
disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 127

☐ 5. **ADDITIONAL INSPECTIONS.** If this box is checked and if a qualified professional performing any inspection 128
of the Property recommends further evaluation of the Property, Buyer shall have an additional _____ 129
(10 days if not filled in) to obtain the additional inspection at Buyer's option and expense. On or before the 130
end of the applicable contingency period, Buyer shall provide a copy of the qualified professional's 131
recommendation and notice that Buyer will seek additional inspections. If Buyer gives timely notice of 132
additional inspections, the applicable contingency period shall be replaced by the additional period specified 133
above. The time for conducting the additional inspections shall commence on the day after Buyer gives 134
notices under this paragraph, and shall be determined as set forth in the Computation of Time paragraph of 135
the Agreement. 136

6. **TAX DESIGNATION.** 137

    a. **Classification of Property.** Seller represents that the Property is classified as ☐ open space 138
    ☑ farm and agricultural ☐ timberland under Chapter 84.34 RCW. 139

    ☑ b. **Removal from Classification.** Buyer shall not file a notice of classification continuance at the time of 140
    Closing and the Property shall be removed from its classification. All additional taxes, applicable interest, 141
    and penalties assessed by the county assessor when the Property is removed from its classification shall 142
    be paid by ☑ Seller ☐ Buyer ☐ both Seller and Buyer in equal shares (Seller if no box is checked). 143

    ☐ c. **Notice of Classification Continuance.** In order to retain this classification, Buyer shall execute a notice 144
    of classification continuance at or before the time of Closing. The notice of classification continuance shall 145
    be attached to the real estate excise tax affidavit. Buyer acknowledges that if Buyer fails to execute a 146
    notice of classification continuance, the county assessor must reassess the Property's taxable value and 147
    retroactively impose additional taxes, applicable interest, and penalties, which Buyer shall pay. 148

Initials: BUYER: _____ Date: _4-25-10_ SELLER: _7M_ Date: _4-27-16_

       BUYER: _____ Date: _4-25-10_ SELLER: _____ Date: _____

©Copyright 2006
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## TITLE CONTINGENCY ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated **April 25, 2010**                    1

between **Ronald A Wheatley & Lisa D Abramo**                    ("Buyer")  2

and **Mahan Property, LLC**                    ("Seller")  3

concerning **15005 129th Lane SE, Yelm, WA 98597**                    (the "Property").  4

1. **Title Contingency.** This Agreement is subject to Buyer's review of a preliminary commitment for title insurance,  5
   together with easements, covenants, conditions and restrictions of record, which are to be obtained by Buyer, to  6
   determine that they are consistent with Buyer's intended use of the Property. Buyer shall have ___**10**___ days  7
   (5 days if not filled in) ❑ from mutual acceptance of this Agreement or ☑ from the date of Buyer's receipt of the  8
   preliminary commitment for title insurance (from mutual acceptance, if neither box checked) to give written  9
   notice of Buyer's disapproval and the reasons therefore. Buyer may only disapprove exceptions that are 10
   contained in the preliminary commitment and may not object to matters not contained therein.                    11

   Seller shall have _____ days (5 days if not filled in) after receipt of Buyer's notice of disapproval to give 12
   Buyer written notice that Seller will clear all disapproved exceptions. Seller shall have until the Closing Date to 13
   cure all disapproved exceptions. If Seller does not give timely notice that Seller will clear all disapproved 14
   exceptions, Buyer may terminate this Agreement within 3 days after the deadline for Seller's notice. In the event 15
   Buyer elects to terminate the Agreement, the Earnest Money shall be returned to Buyer, less any unpaid costs 16
   described in the Agreement. Buyer shall have no right to specific performance or damages as a consequence of 17
   Seller's inability to provide insurable title. If Buyer does not terminate the Agreement, Buyer shall be deemed to 18
   have waived all objections to title, which Seller did not agree to clear.                    19

2. **Supplemental Title Reports.** If Buyer receives supplemental title reports that disclose new exception(s) to the 20
   title commitment, then the time periods and procedures for notice, correction, and termination above shall apply 21
   to the date of Buyer's receipt of the supplemental title report.                    22

3. **Marketable Title.** This Addendum does not relieve Seller of the obligation to provide marketable title at closing 23
   as provided in the Agreement.                    24

Initials: BUYER: _____ Date: _4·25·10_  SELLER: _7M_  Date: _4-27-10_
         BUYER: _____ Date: _4-25-10_  SELLER: _____  Date: _____

When recorded return to:

# REAL ESTATE CONTRACT
## (RESIDENTIAL SHORT FORM)

ANY OPTIONAL PROVISION NOT INITIALED BY ALL PERSONS SIGNING THIS CONTRACT—
WHETHER INDIVIDUALLY OR AS AN OFFICER OR AGENT — IS NOT A PART OF THIS CONTRACT.

1  PARTIES AND DATE. This Contract is entered into on _____

   between _____

   as "Seller" and _____

   as "Purchaser."

2  SALE AND LEGAL DESCRIPTION. Seller agrees to sell to Purchaser and Purchaser agrees to purchase from
   Seller the following described real estate in _____ County, State of Washington:

Abbreviated Legal: (Required if full legal not inserted above.)

Tax Parcel Number(s):

3.  PERSONAL PROPERTY. Personal property, if any, included in the sale is as follows:

No part of the purchase price is attributed to personal property.

4.  (a)  PRICE. Purchaser agrees to pay: $ _____ Total Price

        Less $_____ Down Payment

        Less $_____ Assumed Obligation(s)

        Results in $_____ Amount Financed by Seller.

   (b)  ASSUMED OBLIGATIONS. Purchaser agrees to pay the above assumed obligation(s) by assuming
        and agreeing to pay that certain _____ dated

        _____  (Mortgage/Deed of Trust/Contract)

        recorded as Auditor's File No. _____

CANNON     04/28/2010 19 55 FAX 3604482000

Seller warrants the unpaid balance of said obligation is $ _____ which is

payable $ _____ on or before the _____ day of _____

(  ) including   (  ) plus interest at the rate of _____ % per annum on the declining balance

thereof; and a like amount on or before the _____ day of each and every

_____ thereafter until paid in full.
(month/year)

NOTE: Fill in the date in the following two lines only if there is an early cash out date on the assumed obligation.

NOTWITHSTANDING THE ABOVE, THE ENTIRE BALANCE OF PRINCIPAL AND INTEREST IS DUE IN FULL NOT LATER THAN _____ , _____.

ANY ADDITIONAL ASSUMED OBLIGATIONS ARE INCLUDED IN ADDENDUM

(c)  PAYMENT OF AMOUNT FINANCED BY SELLER.

Purchaser agrees to pay the sum of $_____ as follows:

$ _____ or more at purchaser's option on or before the _____ day of

_____ (  ) including   (  ) plus interest from

_____ at the rate of _____ % per annum on the declining balance

thereof; and a like amount or more on or before the _____ day of each and every

_____ thereafter until paid in full.
(month/year)

NOTE: Fill in the date in the following two lines only if there is an early cash out date on the amount financed by seller.

NOTWITHSTANDING THE ABOVE, THE ENTIRE BALANCE OF PRINCIPAL AND INTEREST IS DUE IN FULL NOT LATER THAN _____

Payments are applied first to interest and then to principal. Payments shall be made at _____ or such other place as the Seller may hereafter indicate in writing.

5.  FAILURE TO MAKE PAYMENTS ON ASSUMED OBLIGATIONS.  If Purchaser fails to make any payments on assumed obligation(s), Seller may give written notice to Purchaser that unless Purchaser makes the delinquent payment(s) within 15 days, Seller will make the payment(s), together with any late charge, additional interest, penalties, and costs assessed by the Holder of the assumed obligation(s). The 15-day period may be shortened to avoid the exercise of any remedy by the Holder of the assumed obligation(s). Purchaser shall immediately after such payment by Seller reimburse Seller for the amount of such payment plus a late charge equal to five percent (5%) of the amount so paid plus all costs and attorney fees incurred by Seller in connection with making such payment.

6.  (a)  OBLIGATIONS TO BE PAID BY SELLER.  The Seller agrees to continue to pay from payments received hereunder the following obligation, which obligation must be paid in full when Purchaser pays the purchase price in full. That certain _____ dated _____
(Mortgage/Deed of Trust/Contract)
_____ , recorded as Auditor's File No. _____ .

ANY ADDITIONAL OBLIGATION TO BE PAID BY SELLER ARE INCLUDED IN ADDENDUM

(b)  EQUITY OF SELLER PAID IN FULL.  If the balance owed the Seller on the purchase price herein becomes equal to the balance owed on prior encumbrances being paid by Seller, Purchaser will be deemed to have assumed said encumbrances as of that date. Purchaser shall thereafter make payments directly to the holders of said encumbrances and make no further payments to Seller. Seller shall at that time deliver to Purchaser a fulfillment deed in accordance with the provisions of paragraph 8.

(c)  FAILURE OF SELLER TO MAKE PAYMENTS ON PRIOR ENCUMBRANCES.  If Seller fails to make any payments on any prior encumbrance, Purchaser may give written notice to Seller that unless Seller makes the delinquent payments within 15 days, Purchaser will make the payments together with any late charge, additional interest, penalties, and costs assessed by the holder of the prior encumbrance. The 15-day period may be shortened to avoid the exercise of any remedy by the holder of the prior encumbrance. Purchaser may deduct the amounts so paid plus a late charge of 5% of the amount so paid and any attorneys' fees and costs incurred by Purchaser in connection with the delinquency from payments next becoming due Seller on the purchase price. In the event Purchaser makes such delinquent payments on three occasions, Purchaser shall have the right to make all payments due thereafter directly to the holder of

LPB 44-05(ir-l) rev. 3/2009
Page 2 of 7

such prior encumbrance and deduct the then balance owing on such prior encumbrance from the then balance owing on the purchase price and reduce periodic payments on the balance due Seller by the payments called for in such prior encumbrance as such payments become due.

7. **OTHER ENCUMBRANCES AGAINST THE PROPERTY.** The property is subject to encumbrances including the following listed tenancies, easements, restrictions, and reservations in addition to the obligations assumed by Purchaser and the obligations being paid by Seller:

ANY ADDITIONAL NON-MONETARY ENCUMBRANCES ARE INCLUDED IN ADDENDUM

8. **FULFILLMENT DEED.** Upon payment of all amounts due Seller, Seller agrees to deliver to Purchaser a Statutory Warranty Deed in fulfillment of this Contract. The covenants of warranty in said deed shall not apply to any encumbrances assumed by Purchaser or to defects in title arising subsequent to the date of this Contract by, through, or under persons other than the Seller herein. Any personal property included in the sale shall be included in the fulfillment deed.

9. **LATE CHARGES.** If any payment on the purchase price is not made within ten (10) days after the date it is due, Purchaser agrees to pay a late charge equal to 5% of the amount of such payment. Such late payment charge shall be in addition to all other remedies available to Seller and the first amounts received from Purchaser after such late charges are due shall be applied to the late charges.

10. **NO ADVERSE EFFECT ON PRIOR ENCUMBRANCES.** Seller warrants that entry into this Contract will not cause in any prior encumbrance (a) a breach, (b) accelerated payments, or (c) an increased interest rate; unless (a), (b), or (c) has been consented to by Purchaser in writing.

11. **POSSESSION.** Purchaser is entitled to possession of the property from and after the date of this Contract or _____, whichever is later, subject to any tenancies described in paragraph 7.

12. **TAXES, ASSESSMENTS, AND UTILITY LIENS.** Purchaser agrees to pay by the date due all taxes and assessments becoming a lien against the property after the date of this Contract. Purchaser may in good faith contest any such taxes or assessments so long as no forfeiture or sale of the property is threatened as the result of such contest. Purchaser agrees to pay when due any utility charges which may become liens superior to Seller's interest under this Contract. If real estate taxes and penalties are assessed against the property subsequent to date of this Contract because of a change in use prior to the date of this Contract for Open Space, Farm, Agricultural, or Timber classifications approved by the County or because of a Senior Citizen's Declaration to Defer Property Taxes filed prior to the date of this Contract, Purchaser may demand in writing payment of such taxes and penalties within 30 days. If payment is not made, Purchaser may pay and deduct the amount thereof plus 5% penalty from the payments next becoming due Seller under the Contract.

13. **INSURANCE.** Purchaser agrees to keep all buildings now or hereafter erected on the property described herein continuously insured under fire and extended coverage policies in an amount not less than the balances owed on obligations assumed by Purchaser plus the balance due Seller, or full insurable value, whichever is lower. All policies shall be held by the Seller and be in such companies as the Seller may approve and have loss payable first to any holders of underlying encumbrances, then to Seller as their interests may appear and then to Purchaser. Purchaser may within 30 days after loss negotiate a contract to substantially restore the premises to their condition before the loss. If insurance proceeds are sufficient to pay the contract price for restoration or if the Purchaser deposits in escrow any deficiency with instructions to apply the funds on the restoration contract, the property shall be restored unless the underlying encumbrances provide otherwise. Otherwise the amount collected under any insurance policy shall be applied upon any amounts due hereunder in such order as Seller shall determine. In the event of forfeiture, all rights of Purchaser in insurance policies then in force shall pass to Seller.

14. **NONPAYMENT OF TAXES, INSURANCE, AND UTILITIES CONSTITUTING LIENS.** If Purchaser fails to pay taxes or assessments, insurance premiums, or utility charges constituting liens prior to Seller's interest under this Contract, Seller may pay such items and Purchaser shall forthwith pay Seller the amount thereof plus a late charge of 5% of the amount thereof plus any costs and attorney's fees incurred in connection with making such payment.

15. **CONDITION OF PROPERTY.** Purchaser accepts the property in its present condition and acknowledges that Seller, his/her agents, and subagents have made no representation or warranty concerning the physical

$7\frac{m}{4\cdot27}$-10

$RA$ 4-25-10
$Row$ 4-25-10

condition of the property or the uses to which it may be put other than as set forth herein. Purchaser agrees to maintain the property in such condition as complies with all applicable laws.

16. RISK OF LOSS. Purchaser shall bear the risk of loss for destruction or condemnation of the property. Any such loss shall not relieve Purchaser from any of Purchaser's obligations pursuant to this Contract.

17. WASTE. Purchaser shall keep the property in good repair and shall not commit or suffer waste or willful damage to or destruction of the property. Purchaser shall not remove commercial timber without the written consent of Seller.

18. AGRICULTURAL USE. If this property is to be used principally for agricultural purposes, Purchaser agrees to conduct farm and livestock operations in accordance with good husbandry practices. In the event a forfeiture action is instituted, Purchaser consents to Seller's entry on the premises to take any reasonable action to conserve soil, crops, trees, and livestock.

19. CONDEMNATION. Seller and Purchaser may each appear as owners of an interest in the property in any action concerning condemnation of any part of the property. Purchaser may within 30 days after condemnation and removal of improvements, negotiate a contract to substantially restore the premises to their condition before the removal. If the condemnation proceeds are sufficient to pay the contract price for restoration or if the Purchaser deposits in escrow any deficiency with instructions to apply the funds on the restoration contract, the property shall be restored unless underlying encumbrances provide otherwise. Otherwise, proceeds of the award shall be applied in payment of the balance due on the purchase price, as Seller may direct.

20. DEFAULT. If the Purchaser fails to observe or perform any term, covenant, or condition of this Contract, Seller may:

   (a) Suit for Installments. Sue for any delinquent periodic payment; or
   (b) Specific Performance. Sue for specific performance of any of Purchaser's obligations pursuant to this Contract; or
   (c) Forfeit Purchaser's Interest. Forfeit this Contract pursuant to Ch. 61.30, RCW, as it is presently enacted and may hereafter be amended. The effect of such forfeiture includes: (i) all right, title, and interest in the property of the Purchaser and all persons claiming through the Purchaser shall be terminated; (ii) the Purchaser's rights under the Contract shall be cancelled; (iii) all sums previously paid under the Contract shall belong to and be retained by the Seller or other person to whom paid and entitled thereto; (iv) all improvements made to and unharvested crops on the property shall belong to the Seller; and (v) Purchaser shall be required to surrender possession of the property, improvements, and unharvested crops to the Seller 10 days after the forfeiture.
   (d) Acceleration of Balance Due. Give Purchaser written notice demanding payment of said delinquencies and payment of a late charge of 5% of the amount of such delinquent payments and payment of Seller's reasonable attorney's fees and costs incurred for services in preparing and sending such Notice and stating that if payment pursuant to said Notice is not received within 30 days after the date said Notice is either deposited in the mail addressed to the Purchaser or personally delivered to the Purchaser, the entire balance owing, including interest, will become immediately due and payable. Seller may thereupon institute suit for payment of such balance, interest, late charge, and reasonable attorney's fees and costs.
   (e) Judicial Foreclosure. Sue to foreclose this Contract as a mortgage, in which event Purchaser may be liable for a deficiency.

21. RECEIVER. If Seller has instituted any proceedings specified in Paragraph 20 and Purchaser is receiving rental or other income from the property, Purchaser agrees that the appointment of a receiver for the property is necessary to protect Seller's interest.

22. PURCHASER'S REMEDY FOR SELLER'S DEFAULT. If Seller fails to observe or perform any term, covenant, or condition of this Contract, Purchaser may, after 30 days' written notice to Seller, institute suit for damages or specific performance unless the breaches designated in said notice are cured.

23. NON-WAIVER. Failure of either party to insist upon strict performance of the other party's obligations hereunder shall not be construed as a waiver of strict performance thereof of all of the other party's obligations hereunder and shall not prejudice any remedies as provided herein.

24. ATTORNEY'S FEES AND COSTS. In the event of any breach of this Contract, the party responsible for the breach agrees to pay reasonable attorney's fees and costs, including costs of service of notices and title searches, incurred by the other party. The prevailing party in any suit instituted arising out of this Contract and in any forfeiture proceedings arising out of this Contract shall be entitled to receive reasonable attorney's fees and costs incurred in such suit or proceedings.

25. NOTICES. Notices shall be either personally served or shall be sent certified mail, return receipt requested, and by _____ regular _____ first _____ class _____ mail _____ to _____ Purchaser _____ at

_____

and to the Seller at _____

4-27-10
7N

AD 4-25-10
RAN 4.25.10

☑ 020/031                                    CANNON                    04/28/2010 19:55 FAX  3804482400

or such other addresses as either party may specify in writing to the other party. Notices shall be deemed given when served or mailed. Notice to Seller shall also be sent to any institution receiving payments on the Contract.

26. TIME FOR PERFORMANCE. Time is of the essence in performance of any obligations pursuant to this Contract.

27. SUCCESSORS AND ASSIGNS. Subject to any restrictions against assignment, the provisions of this Contract shall be binding on the heirs, successors, and assigns of the Seller and the Purchaser.

28. OPTIONAL PROVISION – SUBSTITUTION AND SECURITY ON PERSONAL PROPERTY. Purchaser may substitute for any personal property specified in Paragraph 3 herein other personal property of like nature which Purchaser owns free and clear of any encumbrances. Purchaser hereby grants Seller a security interest in all personal property specified in Paragraph 3 and future substitutions for such property and agrees to execute a financing statement under the Uniform Commercial Code reflecting such security interest.

| SELLER | INITIALS: | PURCHASER |
|--------|-----------|-----------|
|        |           |           |
|        |           |           |

29. OPTIONAL PROVISION -- ALTERATIONS. Purchaser shall not make any substantial alteration to the improvements on the property without the prior written consent of Seller, which consent will not be unreasonably withheld.

| SELLER | INITIALS: | PURCHASER |
|--------|-----------|-----------|
|        |           |           |
|        |           |           |

30. OPTIONAL PROVISION – DUE ON SALE. If Purchaser, without written consent of Seller, (a) conveys, (b) sells, (c) leases, (d) assigns, (e) contracts to convey, sell, lease or assign, (f) grants an option to buy the property, (g) permits a forfeiture or foreclosure or trustee or sheriff's sale of any of the Purchaser's interest in the property or this Contract, Seller may at any time thereafter either raise the interest rate on the balance of the purchase price or declare the entire balance of the purchase price due and payable. If one or more of the entities comprising the Purchaser is a corporation, any transfer or successive transfers in the nature of items (a) through (g) above of 49% or more of the outstanding capital stock shall enable Seller to take the above action. A lease of less than 3 years (including options for renewals), a transfer to a spouse or child of Purchaser, a transfer incident to a marriage dissolution or condemnation, and a transfer by inheritance will not enable Seller to take any action pursuant to this Paragraph; provided the transferee other than a condemnor agrees in writing that the provisions of this paragraph apply to any subsequent transaction involving the property entered into by the transferee.

| SELLER | INITIALS: | PURCHASER |
|--------|-----------|-----------|
|        |           |           |
|        |           |           |

31. OPTIONAL PROVISION – PRE-PAYMENT PENALTIES ON PRIOR ENCUMBRANCES. If Purchaser elects to make payments in excess of the minimum required payments on the purchase price herein, and Seller, because of such prepayments, incurs prepayment penalties on prior encumbrances, Purchaser agrees to forthwith pay Seller the amount of such penalties in addition to payments on the purchase price.

| SELLER | INITIALS: | PURCHASER |
|--------|-----------|-----------|
|        |           |           |
|        |           |           |

32. OPTIONAL PROVISION -- PERIODIC PAYMENTS ON TAXES AND INSURANCE. In addition to the periodic payments on the purchase price, Purchaser agrees to pay Seller such portion of the real estate taxes and assessments and fire insurance premium as will approximately total the amount due during the current year based on Seller's reasonable estimate.

The payments during the current year shall be $ _____ per _____. Such "reserve" payments from Purchaser shall not accrue interest.

$\mathcal{H}$ 4-25 -10

RM 4-25.10

7 $\frac{m}{y}$-27-11

Seller shall pay when due all real estate taxes and insurance premiums, if any, and debit the amounts so paid to the reserve account. Purchaser and Seller shall adjust the reserve account in April of each year to reflect excess or deficit balances and changed costs. Purchaser agrees to bring the reserve account balance to a minimum of $10 at the time of adjustment.

| SELLER | INITIALS: | PURCHASER |
|---|---|---|
| | | |

33. ADDENDA. Any addenda attached hereto are a part of this Contract.

34. ENTIRE AGREEMENT. This Contract constitutes the entire agreement of the parties and supersedes all prior agreements and understandings, written or oral. This Contract may be amended only in writing executed by Seller and Purchaser.

IN WITNESS WHEREOF the parties have signed and sealed this Contract the day and year first above written.

| SELLER | PURCHASER |
|---|---|
| | |
| | |

STATE OF

ss.

COUNTY OF

I certify that I know or have satisfactory evidence that

(is/are) the person(s) who appeared

before me, and said person(s) acknowledged that          signed this instrument and acknowledged it to be

free and voluntary act for the uses and purposes mentioned in this instrument.

Dated:

Notary name printed or typed:
Notary Public in and for the State of
Residing at
My appointment expires:

STATE OF

ss.

COUNTY OF

I certify that I know or have satisfactory evidence that

(is/are) the person(s) who appeared

before me, and said person(s) acknowledged that          signed this instrument and acknowledged it to be

free and voluntary act for the uses and purposes mentioned in this instrument.

Dated:

Notary name printed or typed:
Notary Public in and for the State of
Residing at
My appointment expires:

4-22-10

LPB 44-05(ir-1) rev. 3/2009
Page 6 of 7

4-25-10
4-25-10

STATE OF

COUNTY OF

ss.

I certify that I know or have satisfactory evidence that

(is/are) the person(s) who appeared before me, and said person(s) acknowledged that

signed    this

instrument, on oath stated that                    authorized to execute the instrument and acknowledge it as

the

of                                                                                                              to

be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated:

_____

Notary name printed or typed:
Notary Public in and for the State of
Residing at
My appointment expires:

STATE OF

COUNTY OF

ss

I certify that I know or have satisfactory evidence that

(is/are) the person(s) who appeared before me, and said person(s) acknowledged that

signed    this

instrument, on oath stated that                    authorized to execute the instrument and acknowledge it as

the

of                                                                                                              to

be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated:

_____

Notary name printed or typed:
Notary Public in and for the State of
Residing at
My appointment expires:

$\frac{JM}{477}-10$

AD 4-25-10
RAW 4-25-10

@ 023/031                    CANNON                    04/28/2010 19 56 FAX 3604482400

Form 31
Earnest Money Promissory Note
Rev. 10/98
Pages 1 of 1

©Copyright 1998
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## EARNEST MONEY PROMISSORY NOTE

$ _____ 1,000 _____ _____ Rainier _____ , Washington  1

FOR VALUE RECEIVED,  **Ronald A Wheatley and Lisa D Abramo** _____ ("Buyer")  2

agree(s) to pay to the order of  **Thurston County Title** _____ ("Broker")  3

the sum of _____ **One Thousand** _____ Dollars  4

($ _____ **1,000** _____ ), as follows:  5

☐ within 3 days following mutual acceptance of the Purchase and Sale Agreement.  6

☑ **· upon completion of feasibility study** _____ .  7

This Note is evidence of the obligation to pay Earnest Money under a real estate Purchase and  8

Sale Agreement between the Buyer and _____ **Lawrence & Holly Mahan** _____ ("Seller")  9

dated _____ **4/25/2010** _____ . Buyer's failure to pay the Earnest Money 10

strictly as above shall constitute default on said Purchase and Sale Agreement as well as on this Note.  11

If this Note shall be placed in the hands of an attorney for collection, or if suit shall be brought to collect 12

any of the balance due on this Note, the Buyer promises to pay reasonable attorneys' fees, and all 13

court and collection costs.  14

Date: **April 25, 2010** _____ 15

BUYER _____ 16

BUYER _____ 17

* "On closing" or similar language is not recommended. Use a definite date.  18

WHEN RECORDED RETURN TO:

Name: _____
Address: _____
City, State, Zip _____

14 OCT '09 508701

Thurston County Treasurer
Real Estate Excise Tax paid _____
By _____

LP8 No. 12

## QUIT CLAIM DEED

THE GRANTOR Vail Company LLC

for and in consideration of Love and Affection

conveys and quit claims to Mahan Property LLC

the following described real estate, situated in the County of Thurston, State of Washington, together with all other acquired title of the grantor(s) herein:

Parcel A: Lots 9, 11, 12, 18, 19, 20, 21, 22 and 29 of Large Lot Subdivision No. LL 596-1292 TC, recorded June 22, 2000 under Auditor's File No. 3299479 and as delineated on map recorded under Auditor's File No. 3299480;

Parcel B: An easement for access, utilities and horse trails as delineated on map of Large Lot Subdivision No. LL 596-1292 TC, recorded June 22, 2000 under Auditor's File No 3299480; in Thurston County, Washington.

Tax Account Number: 21602410100        DATED: 10-14-09

21607110800                             81601120100
21601211400                             21601211300
21601321200                             21601320400
                                        21601811200

STATE OF WASHINGTON

COUNTY OF Thurston )

On this 14th day of October, 2009, before me, the undersigned, a notary public in and for the State of Washington, duly commissioned and sworn, personally appeared Lowry Y Mahan + Holly C Mahan known to me to be the individual(s) described in and who executed the within instrument and acknowledged that they signed and sealed the same as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Printed Name: Cheryl A Cannon
Notary Public in and for the State of Washington
Residing at Tenino
My appointment expires 08/25/11

STATE OF WASHINGTON )
COUNTY OF Thurston )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that _____ signed this instrument, on oath stated that _____ was authorized to execute the instrument and acknowledged it as _____ of _____ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____

Printed Name: _____
Notary Public in and for the State of Washington
Residing at _____
My appointment expires _____

Page 1 of 1

LX1 4-25-10
RMW 4.15.10

Form 17C
Rev. 7/09
Page 1 of 5

**SELLER DISCLOSURE STATEMENT †**
**UNIMPROVED PROPERTY**

© Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

SELLER: Larry Mahan as President for Mahan Property, LLC                                                          1

† To be used in transfers of unimproved residential real property, including property zoned for residential use that is not improved by residential     2
dwelling units, a residential condominium, a residential timeshare or a mobile or manufactured home (not including property defined as "timber          3
land" under RCW 84.34.020). See RCW Chapter 64.06 for further explanations.                                                                              4

**INSTRUCTIONS TO THE SELLER**                                                                                                                           5
Please complete the following form. Do not leave any spaces blank. If the question clearly does not apply to the property write "NA." If the             6
answer is "yes" to any asterisked (*) item(s), please explain on attached sheets. Please refer to the line number(s) of the question(s) when you         7
provide your explanation(s). For your protection you must date and initial each page of this disclosure statement and each attachment. Delivery of      8
the disclosure statement must occur not later than five (5) business days, unless otherwise agreed, after mutual acceptance of a written purchase        9
and sale agreement between Buyer and Seller.                                                                                                            10

**NOTICE TO THE BUYER**                                                                                                                                 11
THE FOLLOWING DISCLOSURES ARE MADE BY THE SELLER ABOUT THE CONDITION OF THE PROPERTY LOCATED AT                                                        12
15005 129th Lane SE                                                                                                                                     13

CITY Yelm             , COUNTY Thurston            ("THE PROPERTY") OR AS LEGALLY DESCRIBED ON THE                                                      14
ATTACHED EXHIBIT A. SELLER MAKES THE FOLLOWING DISCLOSURES OF EXISTING MATERIAL FACTS OR MATERIAL                                                      15
DEFECTS TO BUYER BASED ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES                                                       16
THIS DISCLOSURE STATEMENT. UNLESS YOU AND SELLER OTHERWISE AGREE IN WRITING, YOU HAVE THREE (3)                                                        17
BUSINESS DAYS FROM THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO YOU TO                                                       18
RESCIND THE AGREEMENT BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER                                                      19
OR SELLER'S AGENT. IF THE SELLER DOES NOT GIVE YOU A COMPLETED DISCLOSURE STATEMENT, THEN YOU MAY                                                      20
WAIVE THE RIGHT TO RESCIND PRIOR TO OR AFTER THE TIME YOU ENTER INTO A PURCHASE AND SALE AGREEMENT.                                                    21

THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE                                                       22
LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF                                                   23
ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER.                                                                                                        24

FOR A MORE COMPREHENSIVE EXAMINATION OF THE SPECIFIC CONDITION OF THIS PROPERTY YOU ARE ADVISED                                                        25
TO OBTAIN AND PAY FOR THE SERVICES OF QUALIFIED EXPERTS TO INSPECT THE PROPERTY, WHICH MAY INCLUDE,                                                    26
WITHOUT LIMITATION, ARCHITECTS, ENGINEERS, LAND SURVEYORS, PLUMBERS, ELECTRICIANS, ROOFERS, BUILDING                                                   27
INSPECTORS, ON-SITE WASTEWATER TREATMENT INSPECTORS, OR STRUCTURAL PEST INSPECTORS. THE PROSPECTIVE                                                    28
BUYER AND SELLER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE PROPERTY OR TO                                                           29
PROVIDE APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY ADVICE, INSPECTION,                                                      30
DEFECTS OR WARRANTIES.                                                                                                                                  31

Seller ☐ is/ ☒ is not occupying the property.                                                                                                          31

**I.  SELLER'S DISCLOSURES:**                                                                                                                           32

* If you answer "Yes" to a question with an asterisk (*), please explain your answer and attach documents, if available and not otherwise              33
publicly recorded. If necessary, use an attached sheet.                                                           **YES**   **NO**   **DON'T**         34
                                                                                                                                      **KNOW**         35

**1.  TITLE**                                                                                                                                           35

    A.  Do you have legal authority to sell the property? If no, please explain.                                   ☒        ☐        ☐                 36
   *B.  Is title to the property subject to any of the following?                                                  ☐        ☐        ☐                 37
        (1)  First right of refusal                                                                               ☐        ☐        ☐                 38
        (2)  Option                                                                                               ☐        ☐        ☐                 39
        (3)  Lease or rental agreement                                                                            ☐        ☒        ☐                 40
        (4)  Life estate?                                                                                         ☐        ☐        ☐                 41
   *C.  Are there any encroachments, boundary agreements, or boundary disputes?                                   ☒        ☐        ☐                 42
   *D.  Is there a private road or easement agreement for access to the property?                                 ☒        ☒        ☐                 43
   *E.  Are there any rights-of-way, easements, or access limitations that affect the                                                                  44
        Buyer's use of the property?                                                                              ☐        ☒        ☐                 45
   *F.  Are there any written agreements for joint maintenance of an easement or right-of-way?                    ☐        ☒        ☐                 46
   *G.  Is there any study, survey project, or notice that would adversely affect the property?                   ☐        ☒        ☐                 47
   *H.  Are there any pending or existing assessments against the property?                                       ☐        ☒        ☐                 48
   *I.  Are there any zoning violations, nonconforming uses, or any unusual restrictions                                                               49
        on the property that affect future construction or remodeling?                                            ☐        ☒        ☐                 50
   *J.  Is there a boundary survey for the property?                                                              ☒        ☐        ☐                 51
   *K.  Are there any covenants, conditions, or restrictions recorded against title to the property?              ☒        ☐        ☐                 52

PLEASE NOTE: Covenants, conditions, and restrictions which purport to forbid or restrict the conveyance, encumbrance, occupancy, or lease of          53
real property to individuals based on race, creed, color, sex, national origin, familial status, or disability are void, unenforceable, and illegal. RCW  54
49.60.224.                                                                                                                                             55

SELLER'S INITIAL: _7A_____  DATE: _3-17-10_     SELLER'S INITIAL: _AMM___  DATE: _3-17-2010_                                                            56

Form 17C
Rev. 7/09
Page 3 of 5

**SELLER DISCLOSURE STATEMENT**
**UNIMPROVED PROPERTY**

© Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | |
|---|---|---|---|---|
| | | | | 105 |
| | | | | 106 |
| C. If the property is connected to an on-site sewage system: *septic design but no system* | | | | 107 |
| *(1) Was a permit issued for its construction? | ☒ | ☒ | ☐ | 108 |
| *(2) Was it approved by the local health department or district following its construction? | ☐ | ☒ | ☐ | 109 |
| (3) Is the septic system a pressurized system? | ☒ | ☒ | ☐ | 110 |
| (4) Is the septic system a gravity system? | ☐ | ☐ | ☐ | 111 |
| *(5) Have there been any changes or repairs to the on-site sewage system? | ☐ | ☒ | ☐ | 112 |
| (6) Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? If no, please explain: _____ | ☒ | ☐ | ☐ | 113 114 115 |
| *(7) Does the on-site sewage system require monitoring and maintenance services more frequently than once a year? | ☐ | ☒ | ☐ | 116 117 |

**4. ELECTRICAL/GAS**

| | | | | 118 |
|---|---|---|---|---|
| A. Is the property served by natural gas? | ☐ | ☒ | ☐ | 119 |
| B. Is there a connection charge for gas? | ☐ | ☒ | ☐ | 120 |
| C. Is the property served by electricity? | ☒ | ☐ | ☐ | 121 |
| D. Is there a connection charge for electricity? | ☐ | ☐ | ☒ | 122 |
| *E. Are there any electrical problems on the property? | ☐ | ☒ | ☐ | 123 |

**5. FLOODING**

| | | | | 124 |
|---|---|---|---|---|
| A. Is the property located in a government designated flood zone or floodplain? | ☐ | ☒ | ☐ | 125 |

**6. SOIL STABILITY**

| | | | | 126 |
|---|---|---|---|---|
| *A. Are there any settlement, earth movement, slides, or similar soil problems on the property? | ☐ | ☒ | ☐ | 127 |

**7. ENVIRONMENTAL**

| | | | | 128 |
|---|---|---|---|---|
| *A. Have there been any flooding, standing water, or drainage problems on the property that affect the property or access to the property? | ☐ | ☒ | ☐ | 129 130 |
| *B. Does any part of the property contain fill dirt, waste, or other fill material? | ☐ | ☒ | ☐ | 131 |
| *C. Is there any material damage to the property from fire, wind, floods, beach movements, earthquake, expansive soils, or landslides? | ☐ | ☒ | ☐ | 132 133 |
| D. Are there any shorelines, wetlands, floodplains, or critical areas on the property? | ☐ | ☒ | ☐ | 134 |
| *E. Are there any substances, materials, or products in or on the property that may be environmental concerns, such as asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, or contaminated soil or water? | ☐ | ☒ | ☐ | 135 136 137 |
| *F. Has the property been used for commercial or industrial purposes? | ☐ | ☒ | ☐ | 138 |
| *G. Is there any soil or groundwater contamination? | ☐ | ☒ | ☐ | 139 |
| *H. Are there transmission poles or other electrical utility equipment installed, maintained, or buried on the property that do not provide utility service to the structures on the property? | ☐ | ☒ | ☐ | 140 141 |
| *I. Has the property been used as a legal or illegal dumping site? | ☐ | ☒ | ☐ | 142 |
| *J. Has the property been used as an illegal drug manufacturing site? | ☐ | ☒ | ☐ | 143 |
| *K. Are there any radio towers that cause interference with cellular telephone reception? | ☐ | ☒ | ☐ | 144 |

SELLER'S INITIAL: ___7___ DATE: 3-17-10     SELLER'S INITIAL ___ DATE: 3-17-20 145

3

Form 17C
Rev. 7/09
Page 2 of 5

**SELLER DISCLOSURE STATEMENT**
**UNIMPROVED PROPERTY**

© Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | |
|---|---|---|---|---|
| | | | | 57 |
| | | | | 58 |

**2. WATER** — 59

A. Household Water

(1) Does the property have potable water supply? ☐ ☐ ☐ — 60

(2) If yes, the source of water for the property is: — 61
☐ Private or publicly owned water system — 62
☒ Private well serving only the property — 63
*☐ Other water system — 64
*If shared, are there any written agreements? ☐ ☐ ☐ — 65

*(3) Is there an easement (recorded or unrecorded) for access to and/or maintenance of the water source? ☐ ☒ ☐ — 66, 67

*(4) Are there any problems or repairs needed? ☐ ☒ ☐ — 68

(5) Is there a connection or hook-up charge payable before the property can be connected to the water main? ☐ ☒ ☐ — 69, 70

(6) Have you obtained a certificate of water availability from the water purveyor serving the property? (If yes, please attach a copy.) ☐ ☒ ☐ — 71, 72

(7) Is there a water right permit, certificate, or claim associated with household water supply for the property? (If yes, please attach a copy.) ☐ ☒ ☐ — 73, 74

(a) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? ☐ ☐ ☐ — 75, 76

*(b) If yes, has all or any portion of the water right not been used for five or more successive years? ☐ ☐ ☐ — 77, 78

(c) If no or don't know, is the water withdrawn from the water source less than 5,000 gallons a day? ☐ ☒ ☐ — 79, 80

*(8) Are there any defects in the operation of the water system (e.g. pipes, tank, pump, etc.)? ☐ ☒ ☐ — 81

82

B. Irrigation Water

(1) Are there any irrigation water rights for the property, such as a water right permit, certificate, or claim? (If yes, please attach a copy.) ☐ ☒ ☐ — 83, 84

(a) If yes, has all or any portion of the water right not been used for five or more successive years? ☐ ☐ ☐ — 85, 86

(b) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? ☐ ☐ ☐ — 87, 88

*(2) Does the property receive irrigation water from a ditch company, irrigation district, or other entity? ☐ ☒ ☐ — 89
If so, please identify the entity that supplies irrigation water to the property: — 90, 91

92

C. Outdoor Sprinkler System

(1) Is there an outdoor sprinkler system for the property? ☐ ☒ ☐ — 93

*(2) If yes, are there any defects in the system? ☐ ☐ ☐ — 94

*(3) If yes, is the sprinkler system connected to irrigation water? ☐ ☐ ☐ — 95

**3. SEWER/SEPTIC SYSTEM** — 96

97

A. The property is served by: — 97

☐ Public sewer system — 98
☒ On-site sewage system (including pipes, tanks, drainfields, and all other component parts) — 99
☐ Other disposal system — 100
Please describe: _sept no septic on land_ — 101

B. Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service? ☐ ☐ ☐ — 102, 103

SELLER'S INITIAL: _1m_ DATE: _3-17-15_    SELLER'S INITIAL: _km_ DATE: _3-17-2010_ — 104

2

© Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Form 17C
Rev. 7/09
Page 4 of 5

**SELLER DISCLOSURE STATEMENT
UNIMPROVED PROPERTY**

| | YES | NO | DON'T KNOW | |
|---|---|---|---|---|
| | | | | 146 147 |

**8. HOMEOWNERS' ASSOCIATION/COMMON INTERESTS**

A. Is there a homeowners' association? — ☒ YES ☐ NO ☐ DON'T KNOW — 148

Name of association and contact information for an officer, director, employee, or other authorized agent, if any, who may provide the association's financial statements, minutes, bylaws, fining policy, and other information that is not publicly available: — 149 150 151 152

Country Hill Ranches

B. Are there regular periodic assessments? — ☐ ☐ ☐ — 153

_____ per ☐ month ☐ years — 154

☐ Other _____ — 155

\*C. Are there any pending special assessments? — ☐ ☒ ☐ — 156

\*D. Are there any shared "common areas" or any joint maintenance agreements (facilities such as walls, fences, landscaping, pools, tennis courts, walkways, or other areas co-owned in undivided interest with others)? — ☐ ☒ ☐ — 157 158 159

160

**9. OTHER FACTS**

\*A. Are there any disagreements, disputes, encroachments, or legal actions concerning the property? — ☐ ☒ ☐ — 161

\*B. Does the property have any plants or wildlife that are designated as species of concern, or listed as threatened or endangered by the government? — ☐ ☒ ☐ — 162 163

\*C. Is the property classified or designated as forest land or open space? — ☒ ☐ ☐ — 164

D. Do you have a forest management plan? If yes, attach. — ☐ ☒ ☐ — 165

\*E. Have any development-related permit applications been submitted to any government agencies? — ☐ ☒ ☐ — 166

If the answer to E is "yes", what is the status or outcome of those applications? — 167 168

169

**10. FULL DISCLOSURE BY SELLERS**

170

A. Other conditions or defects:

\*Are there any other existing material defects affecting the property that a prospective buyer should know about? — ☐ ☒ ☐ — 171 172

173

B. Verification

The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a copy of this disclosure statement to other real estate licensees and all prospective buyers of the property. — 174 175 176 177

Date: _____    Date: 3-17-2010 — 178

Seller: _____    Seller: Holly Mahan — 179

180

**NOTICES TO THE BUYER**

**SEX OFFENDER REGISTRATION**

181

INFORMATION REGARDING REGISTERED SEX OFFENDERS MAY BE OBTAINED FROM LOCAL LAW ENFORCEMENT AGENCIES. THIS NOTICE IS INTENDED ONLY TO INFORM YOU OF WHERE TO OBTAIN THIS INFORMATION AND IS NOT AN INDICATION OF THE PRESENCE OF REGISTERED SEX OFFENDERS. — 182 183 184

**PROXIMITY TO FARMING**

185

THIS NOTICE IS TO INFORM YOU THAT THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE MAY LIE IN CLOSE PROXIMITY TO A FARM. THE OPERATION OF A FARM INVOLVES USUAL AND CUSTOMARY AGRICULTURAL PRACTICES, WHICH ARE PROTECTED UNDER RCW 7.48.305, THE WASHINGTON RIGHT TO FARM ACT. — 186 187 188 189

SELLER'S INITIAL: _Jon_ DATE: 3-17-10 , SELLER'S INITIAL: HM DATE: 3-17-2010 — 190

Form 17C
Rev. 7/08
Page 6 of 6

### SELLER DISCLOSURE STATEMENT
### UNIMPROVED PROPERTY

© Copyright 2008
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## II. BUYER'S ACKNOWLEDGEMENT                                                        191
                                                                                      192
Buyer hereby acknowledges that:

A. Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent    193
   attention and observation.                                                          194

B. The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and not by any real         195
   estate licensee or other party.                                                     196

C. Buyer acknowledges that, pursuant to RCW 64.06.050 (2), real estate licensees are not liable for inaccurate information provided by         197
   Seller, except to the extent that real estate licensees know of such inaccurate information.     198

D. This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.             199

E. Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has received a copy     200
   of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).     201

DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT ARE PROVIDED BY SELLER BASED ON SELLER'S ACTUAL      202
KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE. UNLESS BUYER AND SELLER         203
OTHERWISE AGREE IN WRITING, BUYER SHALL HAVE THREE (3) BUSINESS DAYS FROM THE DAY SELLER OR SELLER'S    204
AGENT DELIVERS THIS DISCLOSURE STATEMENT TO RESCIND THE AGREEMENT BY DELIVERING A SEPARATELY            205
SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. MAY WAIVE THE RIGHT TO RESCIND      206
PRIOR TO OR AFTER THE TIME YOU ENTER INTO A SALE AGREEMENT.                                             207

BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKNOWLEDGES THAT          208
THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE LICENSEE OR        209
OTHER PARTY.

DATE: _____4.25.10_____          DATE: ____4-25-10____                                  210
BUYER: _____          BUYER: __Rena Alassaio__                                211

### BUYER'S WAIVER OF RIGHT TO REVOKE OFFER                                             212

Buyer has read and reviewed the Seller's responses to this Seller Disclosure Statement. Buyer approves this statement and waives Buyer's right   213
to revoke Buyer's offer based on this disclosure.                                       214

DATE: _____           DATE: _____                                  215
BUYER: _____          BUYER: _____                                 216

### BUYER'S WAIVER OF RIGHT TO RECEIVE COMPLETED SELLER DISCLOSURE STATEMENT            217

Buyer has been advised of Buyer's right to receive a completed Seller Disclosure Statement. Buyer waives that right. However, if the answer to   218
any of the questions in the section entitled "Environmental" would be "yes," Buyer may not waive the receipt of the "Environmental" section of the   219
Seller Disclosure Statement.                                                           220

DATE: _____           DATE: _____                                  221
BUYER: _____          BUYER: _____                                 222

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line number(s) of   223
the question(s)                                                                        224

_____                      225
_____                      226
_____                      227
_____                      228
_____                      229
_____                      230
_____                      231
_____                      232

SELLER'S INITIAL: __7 m__ DATE: __3/7-18__     SELLER'S INITIAL: __AMM__ DATE: 3\7-2010    233

5

# Signature Srvc RE Rainier Inc.

302 Binghampton St. W, Rainier, WA 98576 • 360-446-4646

## Estimated Payment Calculation

Prepared: April 25, 2010

*The Information on this estimated payment calculation sheet is deemed reliable, but is not guaranteed. Accuracy should be verified by the financial institution to be used. Payment amounts are estimates for the first payment and subsequent payments may be higher or lower depending on future changes in taxes, insurance rates etc. The interest is calculated compounded monthly. Mortgage companies may calculate interest differently.*

| | | |
|---|---|---|
| Purchase Price | | 685,000.00 |
| Down Payment | | $20,000.00 |
| LTV Ratio: 78.47%, PMI Rate: 0% | | |
| **Loan Amount** | **$** | **$65,000** |
| Starting Date: May 2010 | | |
| Interest Rate | | 8.000 % |
| Number of Payments | | 240 Payments |
| Loan Term | | 20 Years |
| Annual Property Tax | | 0 |
| Annual Homeowner Insurance | | 0 |
| **Monthly Payment** | | |
| Principal & Interest Payment | | $543.69 |
| Property Tax | | $0.00 |
| Homeowner Insurance | | $0.00 |
| PMI Payment | | $0.00 |
| **Total Monthly Payment** | **$** | **$543.69** |

Prepared By

Bojana Foster
Contact at: 360-446-4646 x11